Howry, J.,
delivered the opinion of the court:
Plaintiff was dismissed from the civil service of the Government whilst engaged in the performance of clerical duties at the pension agency in Indianapolis, Ind. Soon after his discharge the Civil Service Commission certified to the Secretary of the Interior (in response to the request of that official for the certificate necessary for reinstatement of plaintiff) that it appeared that he had been separated by removal without delinquency or misconduct from his position as clerk in the classified service, and that he served in the military service and was honorably discharged therefrom. Thereupon plaintiff was reinstated in the classified service on the certificate of the Civil Service Commission by becoming a watchman in another department at a less compensation. He was subsequently promoted to the position of a clerk at the same compensation he was receiving when he was separated from the service by order of the Commissioner of Pensions. The action is brought to recover the sum of $2,544, as the difference between the amount he would have received had he continued at the pension agency and the amount he did receive by virtue of his services elsewhere, upon the allegation that his removal in the first instance was unlawful.
Plaintiff rests his right to recover upon the disregard of an executive order which prohibits removal from any position subject to competitive examination except for just cause and upon written charges filed with the appointing officers and of which the accused must have full notice, with an opportunity to make defense; and, next, upon the alleged violation of the statute which gives preference, for appointments to civil offices to those honorably discharged from the military or naval service. Counsel for plaintiff present what they term the dilemma of the Government involved in the proposition that, if it be held that the removal of the claimant was for inefficiency, then the proceedings which accomplished his removal were in violation of the executive order, but if he was removed because of a reduction in force made necessary by the diminution of the amount of public moneys applicable, then the statute which gives preference to clerks or employees of military record was violated.
*479 The executive order, set forth in the findings, which prohibits removals unless written charges are filed, is a general order. The order which discontinued plaintiff’s services was special in character and superseded the general order for the purposes of this case if the special order was an executive act or the equivalent of executive authority. That it was tantamount to a special executive order plaintiff denies, because it is argued on the authority of Wicker sham’s case (201 U. S., 390, affirming this court, 39 C. Cls. R., 558) that charges were necessary, and that a surveyor-general there had based the suspension of the employee on the ground that his services were not needed for lack ofo work, and that it appeared there that the attempted suspension was without authority. This court held the suspension to be wrongful, and the employee was allowed the compensation given by law to the incumbent for the period of absence under the unauthorized suspension. The suspension of Wickersham, however, was arbitrary. Its plain meaning was to substitute some other employee for the suspended employee. The findings disclosed that within two weeks the same subordinate dismissing that plaintiff reported an accumulation of work, with a request for the employment of an additional clerical force in place of the suspended employee. The Commissioner of the General Land Office had the dismissed employee reinstated. The suspension being clearly wrongful, it was held on the authority of Lellmann’s case (37 C. Cls. R., 128) that the suspended employee was entitled to recover.
Neither of those cases presents the question in issue here. This plaintiff was not discharged merely because of inefficiency. True, his efficiency, as compared with some one else in the employ of the pension agent, was involved. But his discontinuance from the service was because of the requirement of the law to reduce the force and the consequent necessity for competent authority to exercise the necessary discretion to determine who among all the employees was the least efficient. By the appropriation act providing for clerk hire at pension agencies for the .fiscal year ending June 30, 1898 (29 Stat., 479), it was provided that the salaries of all clerks were subject to the approval of the Secretary of the Interior. By the act making appropriations for the fiscal *480 year ending June 30, 1890 (30 Stat., 276), the amount appropriated was less, accompanied with a former provision that the amount of clerk hire for each agency should be apportioned in proportion to the number of pensioners paid at each agency, and the salaries ,as to all clerks was likewise subject to approval. It will thus be seen that if a reduction of force was provided for by law there was a necessity to make removals without the filing of written charges and without notice.
By an act approved August 15,1876 (19 Stat., 169), it was provided that in making any reductions of force in the executive departments the head of such department .should retain those persons who might be equally qualified who had been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers. In Keim v. United States (177 U. S., 290) the Supreme Court in affirming this court (SB C. Cls. R., 174) said that Congress had generously provided for the discharge of the national obligation to those who had done faithful service in the army or navy. Mr. Justice Brewer, in delivering the opinion of the court, added:
“ But it would be an insult to the intelligence of Congress to suppose that it contemplated any degradation of the civil service by the appointment to or continuance in office of incompetent or inefficient clerks simply because they had been honorably discharged from the military or naval service. The preference, and it is only a preference, is to be exercised as between, those ‘ equally qualified.’ ”
After declaring that the determination of the question of efficiency from the heads of departments to the courts was never contemplated, the court held that the efficiency of those who had been tested in the service was with the administrative officers. Being, then, an administrative function more than judicial, courts can not supervise the judgment of the proper administrative officer as to whose services could be dispensed with any more than the judiciary can be called upon to supervise the results of a civil-service examination. When, as stated in Wiekersham's case, supra, it was held that the employee was entitled to the privileges and emoluments of his position where there was an attempted suspension without authority of law, it also appeared that there could *481 be no retention of a place in the civil service when, by his own action, the employee became legally disqualified or was taken out of'the service by some duly authorized public authority. The principle that there can be no interference of the courts with the performance of the ordinary duties of the executive departments is too well established for the court to group the authorities. The findings show that plaintiff’s rating as to habits was poor. But whatever they were and however efficient he may have been, the findings also show that plaintiff’s services were discontinued because of the law which compelled a reduction of the force. When it was determined by the proper authority that plaintiff was not as well qualified as some other employee in the service to remain, the discretion invested by law in the removing power must be held to have been exercised properly unless there be something in the final contention of the plaintiff that the Commissioner of Pensions had no authority to determine the question of who should be removed because he was not the head of the Interior Department.
In Decatur v. Paulding (14 Pet., 497) it was said by Chief Justice Taney that the interposition of the courts with the performance of the ordinary duties of the executive departments might throw the whole subject of pensions into the greatest confusion and disorder. If that be true concerning pensions paid at that time, what would ensue now if the court should undertake to interfere with the executive management of pensions ? In legal contemplation the head of a department is an arm of the Executive. (Wolsey v. Chapman, 101 U. S., 755.) But in the nature of things its head can give but small personal attention to the very many questions arising in the various offices under his control. The Pension Office is a large branch of the Interior Department. It is directed by a commissioner and, like the General Land Office and the office of the Commissioner of Indian Affairs, has a chief with duties and obligations of vast importance and responsibility. All these officials are made subject by law to the direction and control of the Secretary of the Interior. (Rev. Stat., secs. 453, 471; Knight v. United States Land Association, 142 U. S., 161.) In Wilcox v. Jackson (13 Pet., *482 498) the question was directly presented whether- an order from an executive department was “ by order of the President,” and the court felt justified in presuming that the departmental order was with the ajiprobation and direction of the President. “ Such an order sent out from the appropriate .executive department in the regular course of business ” was declared by the court to be “ the legal equivalent of the President’s own order to the same effect.” (101 U. S., 770.) When the responsible head of the Pension Office exercised discretion as to the capacity between those in office and removed plaintiff the administrative discretion thus exercised can not be made the subject of review by the courts.
Petition dismissed.