## LOVE v. UNITED STATES.

### No. 11503.

Circuit Court of Appeals, Eighth Circuit.

Nov. 21, 1939.

Rehearing Denied Dec. 9, 1939.

Harold R. Love, pro se.

Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn. (Victor E. Anderson, U. S. Atty., of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought against the United States of America by Harold R. Love to obtain an adjudication and judgment by the court compelling the United States to take him into its employment, and to pay him certain sums of money (less than ten thousand dollars) as compensation for certain periods during which he claims he had a legal right to government employment but such right was wrongfully denied him. He filed his suit and appeared in the District Court without counsel, and

his very voluminous complaint lacks the formality and coherence usually found in pleadings. It contains, however, specific allegations that jurisdiction in the case is conferred upon the District Court by the provisions of the Tucker Act, 28 U.S.C.A. § 41 (20), and that the cause of action arises under the Acts of Congress and lawful Regulations pursuant thereto.

The United States urged no point against the complaint as to any defect of form, but moved to dismiss it upon the grounds (1) that the court was without jurisdiction of the subject matter, and (2) that there was a failure to state facts sufficient to constitute a cause of action. After hearing upon briefs and oral arguments, the motion was "in all respects granted" and the action was dismissed for want of jurisdiction. Mr. Love has appealed, asserting error in the ruling and judgment.

It appears from the complaint that Mr. Love is a native-born United States citizen and an honorably discharged veteran of the World War, and that after his army discharge he was employed under the Treasury Department of the United States from 1920 through 1923 in the capacity of "agent" or "inspector" at a salary of (apparently) $2,750 per annum. After the termination of that employment and in the year 1920, he took and successfully passed a civil service examination, receiving the classification of "auditor, accountant and statistician", but was never appointed or assigned to duty in such capacity. Since March 1933 he has been in actual need or classified as such, and from June, 1936, until August 22, 1938, he was employed upon Works Progress Administration Project 5191 in Minneapolis, Minnesota. He was discharged from that work on the last named date and has been unable to obtain private employment and has been without government employment since that time.

The complaint has been studied in all its parts, but as the controlling question for this court is whether the District Court had jurisdiction, it is not necessary to set out all the particulars. The prayer of the complaint is elaborated and discloses the theory upon which the jurisdiction was invoked. Upon consideration of the prayer, it is observed that in the initial paragraphs Mr. Love "demands that it be adjudged" (in substance) that by virtue of his preference rights as a World War veteran and the passing grade he obtained in his classified civil

service examination in 1920, he became and has remained and now is entitled to and shall receive immediate employment under the Department of the Treasury; that payment for his services shall be made to him at the same rate he was receiving when he was employed as a revenue agent in the year 1923; and that he recover from the United States back pay at the same rate from March 13, 1936, until his employment begins under the order of the court in this case.

Following this prayer of the complaint, it is stated that if the court should not determine as thus prayed, then alternative relief was demanded. Such alternative relief is not related to employment of Mr. Love under the Department of the Treasury, but to his employment under the Works Progress Administration. That part of the prayer will, therefore, be later and separately discussed. We consider first whether the court had jurisdiction to entertain the action against the United States to compel the employment of Mr. Love in the Department of the Treasury of the United States, or to award him a money judgment for pay during the period for which he asserts he had a right to be employed.

It is to be noted in the first place that Mr. Love has asserted no claim that he has ever had or now has any "title to office" in the government as the term "office" is understood and accepted. His contentions relate only to the alleged right to be employed in capacities distinct from and subordinate to those who hold "office". He makes many charges against such officers and others subordinate to "officers" but superior to himself in the conduct of the "office" where he has worked and in other departments, and they are alleged to have acted arbitrarily and unlawfully in denying him employment. Certain disputes which have arisen on various occasions in the course of our history in respect to the tenure of "offices" and the power to make removals of incumbents or to replace them with other appointees, have called forth the utmost effort of the courts to find peaceful solution in law and reason. Several such controversies were recognized to be of far-reaching importance. They were justiciable and were settled upon profound consideration by judicial determination.

But such determination has always been rested upon the interpretation and application of the provisions of the constitu-

tion and federal enactments. It can not be predicated upon any judicial concept concerning an able-bodied, competent and willing man's natural or inherent right to work. Unless a legal right has been defined and conferred by legislative authority, no justiciable controversy is present. The principles applicable are the same in the field of government work as in the broader field of private enterprise. The right to work at a particular employment must be shown to have become vested by law in the person asserting it. Shurtleff v. United States, 189 U.S. 311, 23 S.Ct. 535, 47 L.Ed. 828; Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160; Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611.

Mr. Love contends that the preference provisions of the Civil Service Act, 5 U.S.C.A. § 631 et seq., as amended and supplemented by the Rules and Regulations, operate to confer the legal right upon him to have government employment and that they impose a reciprocal duty and obligation upon the government to give him employment which is enforceable in his favor in this action.

The first sentence of the Veterans' Preference Act, 5 U.S.C.A. § 35, was enacted in 1865, and the second in 1919. 5 U.S.C.A. § 37 was enacted in 1876, and although modifications in some details have been made [1] and many lawful Rules and Regulations have been promulgated to effectuate the provisions of the law as amended, [2] the nature of the privilege conferred upon honorably discharged veterans in the matter of their employment in the government service has not been changed. The intendment of the law was considered by the Supreme Court in 1900 in the case of Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 576, 44 L.Ed. 774. In that case it appeared that Keim was a Civil War veteran who had been discharged for inefficiency from the clerkship in the Department of the Interior to which he had been appointed. He instituted proceedings in the United States Court of Claims, asserting his status as an honorably discharged veteran who had successfully passed the civil service examination. He requested determination that he had been discharged without any fault of his own and without

just cause; that he was an efficient clerk and discharged his duties faithfully and efficiently and possessed the necessary business capacity for the proper discharge of the duties of his clerkship. He proved that other clerks of the same division were retained in the Department who were not veterans honorably discharged, and that still others lacking such preferred status were appointed on or about the day of his discharge. He sought compensation in damages for loss of his employment. The Court of Claims declined to make findings requested by Mr. Keim and dismissed his petition. On appeal to the Supreme Court the decree of the Court of Claims was affirmed and the decision of the Supreme Court clearly establishes that the preferential provisions of the Civil Service Act, as they stood at the time of the decision, did not operate to confer any absolute right to work for the government such as is claimed by Mr. Love in this case. The court said: "No thoughtful person questions the obligations which the nation is under to those who have done faithful service in its army or navy. Congress has generously provided for the discharge of those obligations in a system of pensions more munificent than has ever before been known in the history of the world. But it would be an insult to the intelligence of Congress to suppose that it contemplated any degradation of the civil service by the appointment to or continuance in office of incompetent or inefficient clerks simply because they had been honorably discharged from the military or naval service. The preference, and it is only a preference, is to be exercised as between those 'equally qualified,' * * *."

The court found nothing in the statutory provisions to indicate that the duty of passing on the competency or qualifications of persons who apply for or who have obtained and are engaged in government employment had been taken away from the administrative officers or transferred to the courts. The court doubted whether "that is a duty which is strictly judicial in its nature." It said: "It would seem strange that one having passed a civil service examination could challenge the rating made by the commission, and ask the courts to review such rating, thus transferring from the commission, charged with the duty of exam-

---

[1] See 5 U.S.C.A. §§ 35 and 37, and 35a and 37a, providing that the preference shall not be extended to the spouses of married employees.

[2] See Civil Service Rules amended to June 30, 1937; Rule VI Sec. 2, Eligible registers; Rule VII Certification; Rule IX Reinstatement.

ination, to the courts a function which is, at least, more administrative than judicial; and if courts should not be called upon to supervise the results of a civil service examination equally inappropriate would be an investigation into the actual work done by the various clerks, a comparison of one with another as to competency, attention to duty, etc. These are matters peculiarly within the province of those who are in charge of and superintending the departments, and until Congress by some special and direct legislation makes provision to the contrary, we are clear that they must be settled by those administrative officers."

See also Longfellow v. Gudger, 57 App. D.C. 50, 16 F.2d 653; Platt v. Prince, 53 R.I. 492, 167 A. 540.

█ It is contended by Mr. Love that his case should be distinguished from the Keim case because in that case a record had been made in the Department in which Mr. Keim worked that Mr. Keim had been "discharged for inefficiency" and no such record has been made as to Mr. Love in the Department of the Treasury. Mr. Love's complaint does not purport to disclose any of the circumstances attending the termination of his employment in that Department. It may have been voluntary on his part. But however his employment in the Department may have terminated in 1923, the same principles are applicable and controlling in both the Keim case and this case, and we do not find that any amendments have been made to the Civil Service Act which change the nature of the preference privileges due on account of military service since the decision in the Keim case was handed down. The power to exercise judgment and discretion there found to reside in the administrative officers remains with them and has not been "transferred to the courts".

Mr. Love contends that a different conclusion, more favorable to him, may be drawn from the decision of the Supreme Court in Dismuke v. United States, 297 U. S. 167, 56 S.Ct. 400, 402, 80 L.Ed. 561. In that case Dismuke claimed to be a retired government employee in the classified civil service who had rendered thirty years service to the government. The Act of Congress by mandatory provision declared such retired government employee "shall be entitled to an annuity * * * payable from the civil service retirement and disability fund," 5 U.S.C.A. § 736a, and the Director of Insurance having refused to allow Dismuke's claim for the annuity, Dismuke brought suit for it against the United States under the Tucker Act. The Supreme Court held that the suit was maintainable. It was observed that the right of the employee to the annuity granted by mandatory Act of Congress was "inseparable from the correlative obligation of the employer, the United States" and it was held that the suit to recover the annuity was "upon a claim 'founded upon a law of Congress'", and so was "within the jurisdiction conferred upon District Courts, as are suits to recover sums of money which administrative officers are directed by Act of Congress to 'pay' or 'repay.'"

Careful study of the decision discloses no support for Mr. Love's contentions in respect to his claimed right to employment in the Treasury Department. No mandatory act of Congress compelled the United States or any of its officers to employ Mr. Love in the Treasury Department, and consequently neither the United States nor any of its officers was under an obligation to pay him compensation for failure to obtain employment in that Department which could be said to be "founded upon a law of Congress" comparable to the obligation of the United States to Mr. Dismuke shown in this case.

█ Mr. Love also urges that the Keim case and others in accord with it were decided prior to the passage of the Tucker Act, and that such enlargement of the judicial power results from the provisions of that Act as to justify jurisdiction in this case. Undoubtedly the United States does by the terms of the Act give its consent to be sued in the courts upon many claims which the courts were not theretofore empowered to entertain without special consent shown. But we find nothing in the Act extending the judicial power to such supervision over administrative action as is involved in this action. The extent of and the limitations upon judicial review of administrative action are most clearly illustrated by the decision in the Dismuke case, above discussed, and the facts in this case do not bring it within the principles upon which jurisdiction was there sustained. We conclude that notwithstanding the Tucker Act, the administrative action and inaction resulting in Mr. Love's unemployment remains "beyond review in the courts either by mandamus to reinstate him or by compelling payment of salary as though he had not been re-

moved". Keim v. United States, supra, 177 U.S. page 294, 20 S.Ct. page 575, 44 L.Ed. 774. The District Court, therefore, was entirely without jurisdiction to award Mr. Love any of the relief he prayed for in respect to compelling his employment in the Department of the Treasury or awarding him compensation that would have been payable to one employed in that Department of .the government.

Following that part of the prayer of Mr. Love's complaint above set forth and in the next paragraphs it is prayed as alternative relief that it be adjudged (in substance) :

That plaintiff was entitled to be employed upon the Works Progress Administration Project 5191 after August 22nd 1938 and is now entitled to such employment upon the successor project of Project 5191, either at the rate of pay he was receiving when he was discharged on that date or at the higher rate of pay given to one Paul Cox who was employed in his place, and that a recovery be awarded him for the period during which he was wrongfully denied employment under the Works Progress Administration.

Mr. Love's complaint relating to his employment by the Works Progress Administration after he had been classified as a person in actual need, contains more details than were set forth in respect to his employment in the Department of the Treasury. It appears that the Works Progress Administration project on which Mr. Love was given employment had as its object the survey of Minneapolis, Minnesota, and he worked as a statistician and "Assistant in Charge of the Office". His duties included computation and instruction in trigonometric functions and surveying calculations, assisting transit men in the field, making the survey computations used in the office for the compiling of maps and the checking of errors, and general office supervision. In the course of his checking for errors he became convinced that the survey was not being conducted properly for lack of an accurate base-line and for lack of astronomical observation on triangulation lines. He thought that the result of the errors would render the survey useless and had a conversation with the Superintendent of the project in which the matter was argued, the Superintendent being of the opinion that adjustments could

be made. Mr. Love then, in company with a subordinate civil engineer who was in accord with him, took up the matter in a conversation with one Stanley Jacobson, who was in charge of all the "white collar" W. P. A. projects, and subsequent to the conversation he wrote Mr. Jacobson an extended letter of suggestion and criticism about the survey project and the way in which it had been and was being conducted. Charges were made by Mr. Love to Mr. Jacobson that large sums of money were being wasted on the project and that further sums would be lost unless his judgment was followed. Shortly afterwards Mr. Love's resignation from the project was requested by the Superintendent and refused by Mr. Love. It is alleged that the Superintendent found no fault with the work which had been and was being done by Mr. Love under his employment and that an offer was made to Mr. Love to change him to the work on another project and that Mr. Love refused the offer. Mr. Love's employment on the project was terminated by formal notice known as W. P. A. Form 403 Revised,[3] and the cause assigned for the discharge was "This man not wanted on this project". Although the communications, oral and written, between Mr. Love and the Superintendent of the project might suggest at least some proper considerations prompting the Superintendent, in the exercise of his discretion, to issue the termination order, it is directly charged in the complaint that there ·was no just cause for the discharge and that Mr. Love was entirely without fault and that he was at all times willing, qualified and able to proceed with the work that he was engaged in and that his services were needed and necessary for the proper execution of the project and that he had refused to resign.

Thus it is apparent that Mr. Love's action in respect to the matter of his employment under the Works Progress Administration presents the element of involuntary termination which was not alleged to be present in the matter of his employment in the Department of the Treasury.

Our study of the Acts of Congress and the Rules and Regulations governing the Works Progress Administration convinces that no provision can be found indicating an intent on the part of Congress that those who are authorized to employ and

---

[3] See Handbook of Procedure for State and District Administration, revised February 10, 1938, Ch. XIV Section 10.

discharge employees in the prosecution of the projects shall perform their function capriciously, arbitrarily or wantonly. The Rules and Regulations especially are designed and intended to assure against such action and elaborate provision is made for hearing, passing upon and reviewing complaints and grievances within the Administration.

On the other hand, there is no claim that Mr. Love's employment was for the duration of any term,[4] and it has long been settled law that the power to make selection or appointment implies and carries with it the power to dismiss.[5] Burnap v. United States, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692; Keim v. United States, supra. There can be no question that the authority to select and appoint qualified and suitable persons to carry on the work of the W.P.A. projects has been conferred upon and rested in the Administration to which the execution of the work has been entrusted under the Acts of Congress. The power to dispense with unneeded or unsatisfactory services must also be recognized to reside in the same Administration. No power of supervision over such Administrative action is lodged in the courts. In re Hennen, 13 Pet. 230, 10 L.Ed. 138; Keim v. United States, supra; United States ex rel. Palmer v. Lapp, 6 Cir., 244 F. 377; Block v. Sassman, D.C., 26 F. Supp. 105.

Mr. Love has alleged in his complaint, however that he has exhausted all administrative remedies and on that ground he claims that there is jurisdiction in the court to inquire into the facts and circumstances of his discharge and award him a judgment against the United States if he should be found to have been without fault in his employment. He relies on this point largely upon Dismuke v. United States, above discussed.

As we observed concerning that case, Dismuke had a claim against the United States founded upon an act of Congress which in mandatory terms conferred upon him the right to receive and upon the United States the correlative obligation to pay a certain annuity. It was denied him by the ruling of the Director of Insurance, and on review by the Board of Veterans' Appeals. The United States contended that such ruling was conclusive against Dismuke, but it appeared that the ruling and determination of the administrative authority had turned upon a question of law. Accordingly, in Dismuke's suit against the United States for his annuity under the Tucker Act, the Supreme Court held that the "power of the administrative officer will not, in the absence of a plain command, be deemed to extend to the denial of a right which the statute creates, and to which the claimant, upon facts found or admitted by the administrative officer, is entitled." The court concluded that the administrative ruling upon the question of law was open to judicial review in Dismuke's action.

But in the instant case there was no absolute right to work conferred upon Mr. Love by mandatory Act of Congress comparable to the right to the annuity granted to Dismuke, either because of Mr. Love's preference privileges or because he had passed examination and had obtained some employment under the Public Works Administration. Neither can it be found from the complaint herein that there has been any final administrative decision turning upon any defined question of law based upon facts found or admitted to be true by administrative authority or which could be reviewed by the court in this case. The merits of Mr. Love's disputes with his superiors cannot be passed by the court without assuming a supervision over the course of administering the W. P. A. project. The complaint discloses that Mr. Love disagrees with those in charge as to the degree of accuracy necessary to make the survey valuable and as to whether adjustments are possible. This and other disagreements disclosed may figure in the statement charged to the supervisor and denied by Mr. Love, that the project had a limited use for a man of Mr. Love's particular training and capacity. Such matters are for determination within the Administration. The decision of the Supreme Court in the Keim case is as fully controlling against the jurisdiction in the matter of the employment in and discharge from the W. P. A. employment as in the matter of the employment in the Treasury Department.

---

4 See and compare 18 R.C.L. 509, Sec. 19; 11 A.L.R. 469 and 100 A.L.R. 834 (notes).

5 See and compare cases and comment Tiffany v. Pacific Sewer Pipe Co., 180 Cal. 700, 182 P. 428, 6 A.L.R. 1497, 1502, 1503.

In the case of Eberlein v. United States, 257 U.S. 82, 42 S.Ct. 12, 66 L.Ed. 140, an employee of the Customs Service of the Treasury Department was removed upon certain charges preferred against him. Upon subsequent re-investigation it was reported by the Attorney General and the Supervisor of Customs that the charges had not been sustained, and the President caused Eberlein to be reinstated. He sued the United States in the Court of Claims for his salary for the time he was out of employment. The Court of Claims stated in its opinion that the subsequent investigation had established Eberlein's innocence but it denied him any recovery. The Supreme Court in affirming, stated:

"There can be no question, from the findings in this case, that the plaintiff had the benefit of a hearing according to the regulations then in force. * * * But the things required by law and regulations were done, and the discretion of the authorized officers was exercised as required by law. It is settled that in such cases the action of executive officers is not subject to revision in the courts. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774.

"The order of the President could not have the effect of reinstating the plaintiff to the office from which he was removed. The power of appointment and removal was in the Secretary of the Treasury. It was within the power of Congress to confer this authority on the Secretary. Burnap v. United States, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692."

In Medkirk v. United States, 44 Ct.Cl. 469, the Court of Claims held that discretion in discharging as to the determination of who is "equally qualified" is executed for the President through the executive departments and is not to be reviewed by the courts. In Miller v. United States, 45 Ct.Cl. 509, 514, et seq., it held that the determination of the individual with authority to discharge was final. In this case an individual who was discharged took up his case with the Civil Service Commission and it determined that the discharge was wrongful. The employee then brought his action for damages, but was denied relief on the ground that the court would not go behind the authority of the government officer who had the power to discharge. See 65 C.J. 1296, Sec. 75.

██ Mr. Love has also based contentions upon the provisions of the Declaratory Judgment Act, 28 U.S.C.A. § 400. It is argued (in effect) that even if there was no jurisdiction in the Court over the suit to require the United States to employ Mr. Love or directly to award a judgment for compensation for time when it is claimed he ought to have been employed, still jurisdiction to proceed in the case and declare rights in his favor may be found under that Act. We have given the argument consideration but are persuaded that the Act does not extend the consent of the United States to be sued to suits in which the causes of action presented are not of such a nature as to be justiciable in the courts. The Act makes no mention of suits against the United States, nor does it give any indication of intention to broaden judicial supervision over the executive or administrative departments of the government. As the Supreme Court said in United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 793, 79 L.Ed. 1546, "It does not purport to alter the character of the controversies which are the subject of the judicial power under the Constitution".

██ In suits against the United States the judgment of the court must necessarily be largely declaratory in its nature because the usual award of process or execution is inappropriate. But the Act does not create new substantive rights. Ohio Casualty Ins. Co. v. Marr, 10 Cir., 98 F.2d 973, 975; Board of Commissioners v. Cockrell, 5 Cir., 91 F.2d 412. It is essentially a procedural statute. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Aetna Casualty & S. Co. v. Quarles, 4 Cir., 92 F.2d 321; Putnam v. Ickes, 64 App.D.C. 339, 78 F.2d 223; Southern Pac. Co. v. McAdoo, 9 Cir., 82 F.2d 121, 122; Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, 149; Borchard, The Federal Declaratory Judgments Act, 21 Va.L.Rev. 35, 39. The controversy must be one which is appropriate for judicial determination. Aetna Life Ins. Co. v. Haworth, supra; Stephenson v. Equitable Life Assur. Soc., 4 Cir., 92 F.2d 406, 409; Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97. See Wilson & Co. v. Gates, 8 Cir., 90 F.2d 247.

Other contentions argued have been found to be without merit. We conclude that the court below was without jurisdiction to review the administrative action or omission to act in respect to Mr. Love's

employment, and was without jurisdiction to enter any judgment or adjudication in his favor or against the United States.

Affirmed.