**DOEHLER METAL FURNITURE CO., Inc.,
v. WARREN, Comptroller General of
the United States.**

No. 7972.

United States Court of Appeals for the
District of Columbia.

Decided June 15, 1942.

Mr. Nathan Boone Williams, of Washington, D. C., for appellant.

Mr. John L. Laskey, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

Appellant brought this action in the District Court against the Comptroller General, the head of the General Accounting Office. The prayer is for a declaratory judgment.[1] The Comptroller General's motion to dismiss was granted.

Our statement of the case is a synopsis of the complaint. Plaintiff (appellant) had a contract with the Government to furnish the War Department supplies in the gross amount of $92,000 plus. The contract provided that if plaintiff failed to make deliveries by specified times, the Government could terminate plaintiff's right to proceed, make substitute purchases, and hold plaintiff liable for the "excess cost

---

[1] The Federal Act is found at 28 U.S. C.A. § 400.

occasioned the Government." The Government accepted delivery on a little less than $9,000 worth. The cancellation of the contract by the Government (which action is assumed to have sufficient cause) left supplies to be obtained which would have cost it $82,607.77 under the contract with plaintiff. The Comptroller General in his settlement of claim has determined that it cost the Government $104,290.19 to obtain the remainder of the supplies. Thus the excess cost which plaintiff owes as damages is $21,682.42. The plaintiff alleges that the actual cost to the Government was $94,881.57, and therefore, the excess cost should be $12,273.80, which is $9,408.62 better from its viewpoint. "Wherefore plaintiff prays the declaration * * * that 'excess cost' is the difference between the contract price and the sum actually paid out in completing the same, and that such sum was $12,273.80 and not $21,682.42 as claimed by the defendant herein; and plaintiff prays for an appropriate order for the release of such sum of $9,408.62 as being just, due, and payable."

■ The request, then, is for a declaration of a rule of law, the method of computing excess cost damages, and for a declaration of a fact, the amount of the excess cost. We believe that the complaint does not state a claim upon which relief can be granted.

■ The complaint shows no actual dispute between plaintiff and the Comptroller General on the question of law. The exhibit attached to the complaint, which is the notice of settlement with plaintiff, shows that the General Accounting Office arrived at the excess cost by subtracting the plaintiff's contract price from the cost of the substituted purchases. Plaintiff asks us to declare that excess cost "is the difference between the contract price and the sum actually paid out in completing the same." The difference between the rule of law followed in the General Accounting Office and the declaration of law requested, if any, is so subtle that we are unable to see any disagreement between the parties. Nor does the complaint at any place spell out by statement or by implication any difference of opinion on the law involved. Thus we conclude that there is no concrete dispute on the question of law. It is not the policy of the courts to rule upon an abstract legal question whether the relief prayed for is a declaratory judgment[2] or otherwise.

The factual declaration prayed for is the statement of the correct amount of excess cost. The court is asked to state that excess cost is one figure rather than another. Since both parties use the same contract price figure, the difference in the excess cost is due entirely to the variance in the actual cost figure. The General Accounting Office, in its settlement of claim, puts the cost of the substituted purchases at some $104,000. Plaintiff states that this is wrong and that the cost was only some $95,000. In effect, this is all that plaintiff states.

■ There is no indication whatsoever of why the $9,000 variance. It may have been a mistake of fact, an error of judgment, or a valid difference of opinion, in the realm of either law or accounting, in either the Office of Finance of the War Department,[3] or the General Accounting Office. The General Accounting Office has exercised its judgment and has made its settlement. It is not alleged that there was no basis for its determination, that there was no room for judgment or discretion, or that the use of plaintiff's figure was a ministerial duty. From what is alleged, it appears that the court is being asked to disturb what is, in essence, a finding of fact, or an exercise of discretion.[4] Consider the nature of this complaint against the Comp-

---

[2] Borchard, Declaratory Judgments, 2nd Ed. 1941, 29-48, 81-6, 288-9. Compare United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546, and Agnew & Co., Inc. v. Hoage, 69 App.D.C. 116, 99 F.2d 349. See Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 242, 57 S.Ct. 461, 81 L. Ed. 617, 108 A.L.R. 1000.

[3] We do not consider whether the Chief of Finance of the War Department is a necessary party. See Miguel v. McCarl, 291 U.S. 442, 54 S.Ct. 465,

78 L.Ed. 901. The District Court may have dismissed the complaint (it wrote no opinion) because it felt that not enough could be settled by this action. See Angell v. Schram, 6 Cir., 109 F.2d 380. The District Court has discretion in such matters. 3 Moore and Friedman, Moore's Federal Practice (1938) § 57.02, p. 3203.

[4] Borchard, Declaratory Judgments, 2nd Ed. 1941, 34. See Lambert Lumber Co. v. Jones Engineering & Construction Co., Inc., 8 Cir., 47 F.2d 74.

troller General, the head of an administrative agency,[5] in the light of the statute. "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."[6]

There is no general judicial supervision or review of the Comptroller General's work,[7] but that does not mean that the individual never has any relief from the determinations of the Comptroller General in respect of contract grievances with the United States. Often he may go to a District Court or the Court of Claims and file a suit against the United States.[8] Plaintiff here says that, without question, it has such a right. Instead of suing the Government, however, plaintiff is trying to secure judicial review of the Comptroller General.

As has been indicated, there is, ordinarily, no judicial scrutiny of the General Accounting Office. The judiciary has confined its control over the Comptroller General, so far as we know, to writs of mandamus and mandatory injunctions, and such judicial compulsion is not a common occurrence.[9]

It is clear that this complaint would not support a prayer for a writ of mandamus. Plaintiff carefully states that it wants no such action. Nonetheless it argues that the Comptroller General is suable in the District Court under the declaratory judgment Act. Many of the advantages of declaratory determinations are presented. Much is said about how much less makes a case and how no compulsory mandate is needed. It is said that the fruitful possibilities of declarations have not been enjoyed in as many ways or as often as they should have been. It well may be. In fact, most of what plaintiff says can be accepted without making the dismissal of its complaint erroneous.

The declaratory judgment is basically a type of relief which it is hoped will further the ever present struggle of making justice more just. It is an added number in a court's repertoire from which to choose the appropriate help for a party. Likewise, the existence of another adequate remedy does not foreclose the use of a declaratory judgment where it is otherwise appropriate.[10] The declaratory judgment Act, however, does not increase the jurisdiction of the federal courts, in the sense that, if a court has not had power over certain subject matter or over certain persons, the declaratory judgment Statute does not give it.[11]

As pointed out, the only jurisdiction the District Court has ever had over the actions of the Comptroller General is that of mandamus. Mandamus is one of the extraordinary writs. It in itself is a special remedy. That a court has jurisdiction in certain extreme situations does not mean that it has a generic supervisory and appellate jurisdiction. Thus we hold that the power to issue writs of mandamus does not give a court such general jurisdiction over the agency or subject matter as to enable it to choose another form of relief, the declaratory judgment, for cases in which the writ of mandamus itself could not be issued.[12]

---

[5] Mansfield, Administrative Finality and Federal Expenditures (1938) 47 Yale L.J. 603; 3 Geo.Wash.L.Rev. 97 (1934).

[6] 31 U.S.C.A. § 71.

[7] Mansfield, Administrative Finality and Federal Expenditures (1938) 47 Yale L.J. 603, 614-7.

[8] 28 U.S.C.A. § 41(20). See Borchard, Declaratory Judgments, 2nd Ed. 1941, 373.

[9] Mansfield, Administrative Finality and Federal Expenditures (1938) 47 Yale L.J. 603, 615-7. McCarl v. Cox, 56 App.D.C. 27, 8 F.2d 669, is the first case in this court affirming the issuance of a writ of mandamus against the Comptroller General.

[10] Not all courts have agreed that this is the better view. Since the adoption of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, however, it is definitely the law for the federal courts. Rule 57. 18 Hughes Federal Practice (1940) § 25387. Compare Stephenson v. Equitable Life Assur. Soc., 4 Cir., 92 F.2d 406.

[11] Putnam v. Ickes, 64 App.D.C. 339, 342, 78 F.2d 223, 226; Utah Fuel Co. v. National Bituminous Coal Commission, 69 App.D.C. 333, 101 F.2d 426, aff'd upon other reasoning, 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; Love v. United States, 8 Cir., 108 F.2d 43, 50. Borchard, Declaratory Judgments, 2nd Ed. 1941, 232-4.

[12] Compare Borchard, Declaratory Judgments, 2nd Ed. 1941, 236-7, 342-4, 878. We quote from the last page cited: "Again, no court by declaration or other-

Plaintiff simply has not presented the kind of claim against the Comptroller General upon which any type of judicial relief, whatever its name, may be predicated.

The giving of a declaratory judgment in this case would be in effect an unwarranted enlargement of the District Court's jurisdiction over the Comptroller General and the General Accounting Office. It is well enough to be attuned to the use of new remedial concepts, but it is something else to increase jurisdiction beyond the other provisions of law by a clever use of remedies.

Affirmed.

wise should attempt to control administrative discretion, though the exercise of administrative discretion may well be decreed either by declaration or mandamus." In this case there is no necessity to decide whether a party who has the makings of a mandamus case could ask for a declaration of his rights instead. It would seem that he could if the milder form of relief appeared appropriate to him and to the court. Borchard, Declaratory Judgments, 2nd Ed. 1941, 315 et seq. See Stephenson v. Equitable Life Assur. Soc., 4 Cir., 92 F.2d 406.