Basil M. WESTERN, Sr., and Evelyn B. Western, et al.

v.

James C. McGEHEE, Brigadier General, U.S.A.F., Thomas H. Holbrook, Colonel, U.S.A.F., Thomas A. Personette, Colonel, U.S.A.F.

UNITED STATES of America

v.

236.14 ACRES OF LAND, MORE OR LESS, Situate in PRINCE GEORGE'S COUNTY, State of MARYLAND, and the Estate of Nellie E. Sansbury, et al.

UNITED STATES of America

v.

133.85 ACRES OF LAND, MORE OR LESS, Situate in PRINCE GEORGE'S COUNTY, State of MARYLAND, and Alexander M. Heron, et al.

Civ. Nos. 13436, 12863, 12286.

United States District Court
D. Maryland.

Feb. 19, 1962.

Charles W. Halleck and Hogan & Hartson, Washington, D. C., and James C. Rogers, Rockville, Md., for plaintiffs in Civ. No. 13436.

Thos. L. McKevitt, Dept. of Justice, of Washington, D. C., Joseph D. Tydings, U. S. Atty. and Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for defendants in Civ. No. 13436.

Joseph D. Tydings, U. S. Atty. and Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for plaintiff in Civ. Nos. 12863, 12286.

Charles W. Halleck and Hogan & Hartson, Washington, D. C., for moving defendants in Civ. Nos. 12863, 12286.

THOMSEN, Chief Judge.

The pending motions in these cases bring before the court further efforts by owners of improved property [1] adjacent to or near the Andrews Air Force Base to require the government to condemn an avigation easement over their lands.

### The Condemnation Cases

 In the two condemnation cases, Nos. 12863 and 12286, the government has acquired by right of eminent domain, a clearance or obstruction easement over the properties of defendant landowners. The estate acquired with respect to each tract is the same except for the heights

---

[1] It is alleged in the landowners' complaint that sixteen of the seventeen tracts involved in these motions are improved by residences, the other by a service station and garage.

of the glide plane surfaces and transitional plane surfaces,[2] which vary from 90 feet above the ground to ground level itself in the case of one tract.[3]

The declarations of taking filed in these cases contain no mention of the right to fly over the land. The following quotation from United States v. Brondum, 5 Cir., 272 F.2d 642 (1959), applies here: "In plain words, the Government seeks to acquire the right to cut trees and natural growth to a prescribed height and to remove man-made obstructions above a prescribed height. The estate therefore is sometimes referred to as a 'flight obstruction easement'. Graphically and accurately, Judge Estes describes the easement as a 'ceiling'. The purpose of the ceiling is to increase the margin of safety for flying by assuring that the glide zone will be free from natural growth or man-made obstructions and the pilot's vision unobscured above a designated altitude.

"An avigation easement may or may not contain provisions dealing with obstructions, but, unlike a clearance easement, in express terms it permits free flights over the land in question. It provides not just for flights in the air as a public highway—in that sense no easement would be necessary; it provides for flights that may be so low and so frequent as to amount to a taking of the property." [4] 272 F.2d at 644–45.

---

**2.** The glide plane does not represent the actual line of flight but is the minimum elevation of the approach zones including the allowance of a safety factor. It varies with the contour of the land and depends upon the elevation of the ground beneath any given point in the glide angle plane and the height of the plane above the earth's surface at the given point. Generally in military operations this minimum glide angle commences at ground zero at least 1,000 feet from the runway and rises one foot vertically to every 50 feet horizontally.

**3.** The exact estate which has been condemned is set forth in the Declaration of Taking, which reads as follows for all but one of the landowners involved in these motions:

"The estate taken for said public uses is: A perpetual and assignable easement consisting of the following rights in the land designated in Schedule 'A', lying immediately below the hereinafter described glide plane surfaces and transitional plane surfaces set forth after the land descriptions in Schedule 'A';

"(a) The continuing perpetual right to top trees, bushes, shrubs, or any other perennial growth or undergrowth which infringe upon, extend into, or extend above a plane or planes ten feet below and parallel to the glide plane surfaces and transitional surfaces set forth after the land descriptions in Schedule 'A'.

"(b) The continuing perpetual right to remove, to raze, to destroy, and to prohibit the future construction of buildings, or portions thereof, other structures, or portions thereof, land, embankments of earth and other materials which infringe upon, extend into, or extend above the glide plane surfaces and transitional surfaces set forth after the land descriptions in Schedule 'A'.

"(c) The right of ingress to, and egress from, and passage on and over the land described in Schedule 'A' for the purpose of exercising the rights hereby taken for said public uses;

"Subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines; reserving, however, to the landowners, their heirs, executors, administrators, and assigns all right, title, interest, and privilege as may be exercised and enjoyed without interference with or abridgment of the rights hereby taken for said public uses."

The perpetual and assignable easement taken with respect to the single property of the Westerns is as follows: "(1) The continuing perpetual right to cut to ground level and remove trees, bushes, shrubs, or any other perennial growth, or undergrowth, extending above ground level. (2) The right to prohibit the future construction of buildings, or other structures, above ground level. (3) The right of ingress and egress to the land for the purposes of exercising the rights hereinafter set forth; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines; reserving, however, to the landowners, their heirs, executors, administrators, and assigns, all right, title, interest, and privilege that may be exercised and enjoyed without interference with or abridgment of the easements and rights hereinabove described."

**4.** The Court continued: "Thus, when an avigation easement is taken, such lan-

The landowners have moved for a partial summary judgment in the condemnation cases. They contend that they own the airspace above the ceiling being imposed; that this airspace is being taken and severed from the rest of their property; that the government is using that airspace in a manner which is likely to reduce the value of the remainder of the property, thereby entitling them to compensatory damages for the value of the property actually taken and severance damages by virtue of the present and probable future use to which the superadjacent airspace will be put; and that unless the property is being taken for such public use, the condemnation would be unlawful.

This argument cannot prevail to obtain for the landowners in the condemnation cases any greater compensation than they are entitled to receive for the clearance easement taken by the government.

It has been repeatedly held that on such a record as this " * * * it must be accepted that the claimed right of clearance is merely a provision for assuring that space shall be unoccupied and vision unobstructed above a designated altitude. Unquestionably, this is an aid of avigation. But no flight easement is mentioned or to be inferred, much less claimed, in the present pleadings and, therefore, no servitude can be imposed except for the asserted and precisely limited rights of clearance." United States v. 64.88 Acres of Land, Etc., 3 Cir., 244 F.2d 534, at 535–36 (1957).

As Judge Estes has pointed out: "This is because the Government in each of these proceedings has acquired title to the exact easement or estate which is described in the Declaration of Taking and nothing more. * * * Furthermore, the Court is powerless to change the Declaration of Taking so as to enlarge the easement or rights which the Government has condemned in these proceedings." United States v. 4.43 Acres of Land, Etc., N.D.Tex., 137 F.Supp. 567, at 572 (1956).

### Landowners' Rights

The landowners overlook the fact that their property rights in the superadjacent airspace are limited by the principles stated in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1956), and by 49 U.S.C.A. § 1304, which provides: "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." Sec. 1301 (24) states: " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft." [5]

Of course, frequent flights of aircraft over property, at low altitudes, may cause injury and damage, for which the landowner is entitled to just compensation or damages, or may be so low and so frequent as to constitute a taking of property by the government for public use.

If such flights do not amount to a taking, but cause physical injury or damage, an action for damages may be maintained under the Federal Tort Claims Act. Weisberg v. United States, D.Md., 193 F.Supp. 815 (1961).

In United States v. Causby, supra, the Supreme Court held that flights over private land which are so low and frequent as to be a direct and immediate in-

---

guage is used as: 'for free and unobstructed passage of aircraft through the airspace above the portions of clear zones', (United States v. 51.8 Acres of Land, etc., E.D.N.Y.1957, 151 F.Supp. 631, 633); a 'perpetual and assignable right of way and easement in and over * * * for the flight of aircraft * * *' (United States v. 26.-07 Acres of Land, etc., E.D.N.Y., 1954,

126 F.Supp. 374, 375.)" 272 F.2d at 644–45.

5. Plaintiff cites Annotated Code of Maryland, 1957 ed., Art. 1A, sec. 7. Sec. 8 must also be considered and the rights given by the Maryland statute must be read in connection with the exercise of federal power embodied in 49 U.S.C.A. § 1304, and in federal regulations duly adopted.

terference with the enjoyment and use of the land are as much an appropriation of the use of the land as a more conventional entry upon it. 328 U.S. at 261 et seq., 66 S.Ct. 1062. If such flights amount to a taking, and the government has not instituted condemnation proceedings to acquire an avigation easement, the landowners have a remedy in the District Court, under the Tucker Act, 28 U.S.C.A. § 1346(a) (2), or in the Court of Claims, 28 U.S.C.A. § 1491. United States v. Causby, supra; United States v. Brondum, supra, and cases cited, 272 F.2d at 646, n. 9. Klein v. United States, Ct.Cl. No. 157–58,[6] dealt with a claim based upon the use of a different runway at Andrews Air Force Base. The landowners involved in the instant case have themselves filed such an action in the Court of Claims.

In addition to filing suit in the Court of Claims, these landowners filed an action against the Secretary of the Air Force in the United States District Court for the District of Columbia, alleging that avigation easements over their property had in effect been taken, and seeking to compel the Secretary, either by mandatory injunction or by relief in the nature of mandamus, to institute suitable condemnation proceedings. Although Judge Holtzoff was sympathetic with the plight of the landowners, and recognized certain equities on their side, he noted, on the other hand, that if the Secretary admits he has taken the easements he would surrender the right to contest the question whether the use which has been made of the airspace over the several properties constitutes the taking of property, an issue which he may litigate in the Court of Claims. Judge Holtzoff therefore dismissed the complaint. Western v. Zuchert, D.D.C., Civil Action 3844–61 (1961).

### The Landowners' Action

Undaunted, the landowners are now pressing the action which they filed in this court against the Commanding Officer of Andrews Air Force Base, the Deputy Commander and the Operations Group Commander, for a declaratory judgment and an injunction. They allege in their complaint facts similar to those found by the Court of Claims in Klein v. United States, supra, except that this case involves another runway, recently enlarged, which is said to be the one now principally used. The essential allegations, aside from a recital of the parties and properties involved, may be summarized as follows: (1) that the defendants have permitted, caused and ordered the operation of numerous flights of aircraft from Andrews Air Force Base over plaintiffs' properties at low levels, (2) that within the near future the number of such flights are scheduled to increase, (3) that the flights are noisy, interfere with television and radio reception and with conversation, and constitute a hazard, (4) that the United States has instituted proceedings in this court to acquire clearance easements, (5) that the United States has not instituted proceedings to acquire avigation easements, or as the landowners put it, "to acquire lawfully the interest in the real property which is presently being taken from plaintiffs by force", (6) that defendants are without legal authority to take plaintiffs' properties in the manner described, and (7) that in depriving plaintiffs of their properties defendants are engaged in unauthorized and unlawful activities.

The landowners seek a judgment declaring the extent of the flights; that they cause and will cause damage and depreciation to the property of the plaintiffs, which constitutes a taking of such property; that such taking is continuous, is steadily increasing, and is unlawful; that "such actions by the defendants are illegal, unauthorized, and not pursuant to valid authority, nor could such authority to seize property in this manner be validly conferred"; and that "the actions of the defendants constitute an unlawful, unconstitutional and unwarranted interference with the property of the plaintiffs, and an unlawful taking thereof." The landowners also seek an injunction

---

6. Decided November 2, 1960, reconsidered January 18, 1961.

restraining defendants "from directing, permitting, allowing or in any way causing flights of aircraft over the property of plaintiffs on the way to and from the north ends of the parallel runway system 1–19 at Andrews Air Force Base in such volume and frequency, and at such low levels, as to interfere with the existing usé of plaintiffs' property by plaintiffs, or to devalue and thereby to take all or part of the property of the plaintiffs or to cause damage or depreciation thereto"; and for other and further relief.[7]

Defendants, through the United States Attorney, have moved to dismiss the complaint on the grounds (a) that the complaint fails to state a claim upon which relief can be granted, (b) that the plaintiffs have an adequate remedy at law, (c) that the United States is an indispensable party, and (d) that the Secretary of the Air Force is an indispensable party. These grounds are related, and separately or together they require that the complaint be dismissed.

■ It is true, as the landowners argue, that an officer of the United States may be sued for his torts, and that in certain circumstances his actions may be enjoined.[8] But, as the Supreme Court stated in Larson v. Domestic and Foreign Corp., 337 U.S. 682, at 688–689, 69 S.Ct. 1457, 93 L.Ed. 1628, "In each such case the question is directly posed as to whether, by obtaining relief against the officer, the relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when the agents' actions are restrained, the sovereign itself may, through him, be restrained. * * * In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent has no jurisdiction." 337 U.S. at 688, 69 S. Ct. at 1460.

■ If the actions of the officer are performed pursuant to the terms of his valid statutory authority, they are actions of the sovereign, whether or not they are tortious under general law. If an act is tortious, the officer may be liable in tort, and so may the United States, unless the case is excluded from the provisions of the Federal Tort Claims Act. But the action itself cannot be enjoined or diverted, since it is the action of the sovereign. "* * * the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so 'illegal' as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." Larson v. Domestic and Foreign Corp., supra, 337 U.S. at 701–702, 69 S. Ct. at 1467.[9]

---

7. The complaint ends with the following paragraph: "Furthermore, plaintiffs suggest that the operation of such an injunction against the defendants be suspended for a reasonable period of time to permit the United States of America, the Secretary of the Air·Force, or any other legally designated person, to institute condemnation proceedings, pursuant to the right of eminent domain, to acquire for a proper public use avigation easements over the property of the plaintiffs herein in the event the interests of the public and the military so require. Thereafter, if after a reasonable period of time the proper public authorities decline, neglect, or refuse to acquire by lawful means the necessary avigation easements, then defendants should be permanently enjoined as set out above."

8. Philadelphia Co. v. Stimson, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570 (1912) ; Sloan Shipyards Corp. v. United States, etc., Fleet Corp., 258 U.S. 549, 565–567, 42 S.Ct. 386, 66 L.Ed. 762 (1922); United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882); cf. Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 84 L. Ed. 554 (1940).

9. Goltra v. Weeks, 271 U.S. 536, 544, 46 S.Ct. 613, 70 L.Ed. 1074 (1926), was expressly overruled by Larson, 337 U.S. at 699–702, 69 S.Ct. 1457.

The landowners do not allege in their complaint that defendants lack authority from their superiors or from Congress to operate aircraft owned by the United States over plaintiffs' lands at low altitudes. Such a contention would be frivolous. See, inter alia, 49 U.S.C.A. §§ 1304, 1348(c); 14 C.F.R., Part 60, sec. 60.1, 60.17. The low flights over private property which gave rise to United States v. Causby and the many cases which have followed it were similar authorized flights by members of the armed services of the United States.

■ Nor can they successfully contend that such authority has not been validly or constitutionally conferred. The fact that such flights may result in the taking of an avigation easement does not render the authority for such flights invalid, for if they do result in a taking the government has afforded the landowners a remedy by a suit under the Tucker Act or in the Court of Claims. Yearsley v. Ross Construction Company, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; Larson v. Domestic and Foreign Corp., supra; United States v. Causby, supra.

■ The landowners' demand for an injunction is barred by this adequate remedy at law. Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637 (1932). There, an owner of land lying within the proposed channel of a floodway brought an action against the Secretary of War, the Chief of Engineers and the Mississippi River Commission to prohibit them from putting into effect, without first instituting condemnation proceedings, a flood control plan which would result in the flooding and alleged taking

of plaintiff's property. The Supreme Court said: "If that which has been done, or is contemplated, does constitute such a taking, the complainant can recover just compensation under the Tucker Act in an action at law as upon an implied contract. * * * For even if the defendants are acting illegally, under the act, in threatening to proceed without first acquiring flowage rights over the complainant's lands, the illegality, on complainant's own contention, is confined to the failure to compensate him for the taking, and affords no basis for an injunction if such compensation may be procured in an action at law. The Fifth Amendment does not entitle him to be paid in advance of the taking." 285 U.S. at 104, 52 S.Ct. at 269.

■ The landowners contend, however, that even if an injunction cannot be issued, this court should grant declaratory relief and state whether or not an avigation easement has in fact been taken, and whether or not there have been repeated trespasses. But it is well settled that the Declaratory Judgments Act (28 U.S.C.A. §§ 2201, 2202) does not grant any consent of the United States to be sued. Anderson v. United States, 5 Cir., 229 F.2d 675 (1956); Love v. United States, 8 Cir., 108 F.2d 43 (1943), cert. den. 309 U.S. 673, 60 S.Ct. 716, 84 L.Ed. 1018; Love v. Royall, 8 Cir., 179 F.2d 5 (1950); New York Technical Institute of Maryland v. Limburg, D.Md., Chesnut, J., 87 F.Supp. 308 (1949).[10]

■ Even where a district court has jurisdiction, whether a declaration should issue or the plaintiff be left to his other remedy is a matter within the

10. The landowners cited Carbide and Carbon Chemicals Corp. v. U. S. Industrial Chemicals, 4 Cir., 140 F.2d 47 (1947), where the Court said: "As we have pointed out a number of times, the pendency of a prior suit involving the same issues does not require the dismissal of a suit for declaratory judgment." 140 F.2d at 49. But it is also well established that the Declaratory Judgments Act does not give a court jurisdiction to decide cases and controversies which the judiciary acts do not

otherwise confer, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, at 299, 63 S.Ct. 1070 (1943), or to grant indirectly relief that it could not grant directly. Doehler Metal Furniture Co. v. Warren, 76 U.S.App.D.C. 60, 129 F. 2d 43 (1942), cert. den. 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533; United States ex rel. Jordan v. Ickes, 79 U.S.App.D.C. 114, 143 F.2d 152 (1944), cert. den. 323 U.S. 759, 65 S.Ct. 93, 89 L.Ed. 608; Cross v. Pace, D.D.C., 106 F.Supp. 484, 489 (1952).

sound discretion of the court. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); 6 Moore's Federal Practice (2d ed.), sec. 57.07, p. 3024. The tests are whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not the other remedy is more effective or efficient. Maryland Casualty Co. v. Boyle Constr. Co., 4 Cir., 123 F.2d 558, at 565 (1941); 6 Moore's Federal Practice (2d ed.), sec. 57.08(3), pp. 3031–3032. The requested declarations would not solve the problem in this case. They would not be binding on the United States in the Court of Claims or in a Tucker Act proceeding, and even if they were, the facts would have to be proved over again in the Tucker Act or Tort Claims Act proceedings to show what compensation should be awarded.

■■■■■ The last paragraph of the complaint, see note 7, supra, shows that the landowners do not really seek to enjoin the flights, but to force the Secretary to institute condemnation proceedings. Viewed from this angle, the Secretary would be a necessary party.[11] He cannot be sued in this district, and the judgment rendered by Judge Holtzoff in the action against him in the District of Columbia would be res judicata, an additional reason barring injunctive relief in this case.

Before the decision of the Court of Claims on reconsideration in Klein v. United States, supra, the equities on the side of the landowners were much stronger. Until then they were on the horns of a dilemma, one prong of which was the possible defense that they had brought their suit for just compensation too soon because there had not yet been a

sufficient volume of low flights to constitute a taking, the other that they were barred by limitations because they had waited too long. The final decision in Klein v. United States blunts the latter prong so that it is no longer a serious threat.

### Conclusion

For all of the foregoing reasons (1) the motions of the landowners, for a partial summary judgment in the condemnation cases must be denied, and (2) the motion to dismiss the complaint of the landowners against the officers must be granted. I will enter appropriate orders.

---

**11.** A superior officer is an indispensable party "if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him." Williams v. Fanning, 332 U.S. 490, at 493, 68 S.Ct. 188, at 189, 92 L.Ed. 95 (1947). Such an officer is not indispensable "if the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." Id. at 494, 68 S.Ct. at 189.