**ARKANSAS POWER & LIGHT CO. v. FED-
ERAL POWER COMMISSION et al.**

No. 9125.

United States Court of Appeals
District of Columbia.

Argued Feb. 13, 1946.

Decided June 28, 1946.

Writ of Certiorari Granted Oct. 28, 1946.
See 67 S.Ct. 128.

MORRIS, District Judge, dissenting.

Messrs. P. A. Lasley, of Little Rock,
Ark., and A. J. G. Priest, of New York
City, pro hac vice, by special leave of
Court, with whom Mrs. Virginia C. Dun-
combe, of Washington, D. C., was on the
brief, for appellant. Mr. Spencer Gordon,

of Washington, D. C., also entered an appearance for appellant.

Mr. Cleveland Holland, Assistant Attorney General of the State of Arkansas, pro hac vice, by special leave of Court, with whom Mr. H. Cecil Kilpatrick, of Washington, D. C., was on the brief, for the State of Arkansas as amicus curiae, urging reversal.

Mr. Lambert McAllister, Special Counsel, Federal Power Commission, of Washington, D. C., with whom Mr. Howell Purdue, Senior Attorney, of Washington, D. C., was on the brief, for appellee Federal Power Commission. Messrs. Howard E. Wahrenbrock, Assistant General Counsel, and Louis W. McKernan, Principal Attorney, Federal Power Commission, both of Washington, D. C., entered appearances for appellee Federal Power Commission.

Before CLARK and WILBUR K. MILLER, Associate Justices, and JAMES W. MORRIS, District Judge.*

WILBUR K. MILLER, Associate Justice.

This appeal may be summarized as a request for the answer to a single question: Is the Arkansas Power & Light Company entitled, in a suit for a declaratory judgment, to a judicial determination as to whether the Federal Power Commission or the Arkansas Public Service Commission has exclusive regulatory control over its official corporate accounting records?

It should be noted at the outset that we are not now concerned with deciding which commission possesses the exclusive right of control which both claim; consequently we are not presently confronted with the problem of interpreting the federal and state statutes involved, in order to decide which commission has the paramount power. Our task is simply to ascertain whether the complaint exhibited a justiciable controversy properly cognizable under the Declaratory Judgment Act.[1] That is to say, this appeal does not present for review a judgment of the lower court holding that either this or that commission has sole regulatory authority over the company's official corporate accounts; for the District Court did not reach that question. The order from which this appeal is taken went only so far as to dismiss the complaint[2] "upon the grounds that this Court does not have jurisdiction over the subject matter and that no claim is stated upon which relief can be granted."

Difficulty in considering this matter is avoided if it be borne constantly in mind that the case does not have to do with bookkeeping entries or accounting problems as such. The purpose of the suit is merely to find which commission has the sole, exclusive right of regulatory control over the official accounts. As far as the declaratory judgment sought is concerned, the complaint does not challenge the correctness of, or justification for, any order of either commission with respect to the manner of recording transactions on the company's books, or the allocation of items among prescribed accounts, or the disposition of amounts recorded in various accounts. It is necessary, therefore, in the consideration of this appeal, sharply to distinguish between a judicial review of the manner in which the regulatory control has been exercised, which this case does not involve; and, on the other hand, a judicial determination as to whether the federal commission or the state commission has the *right* under the law to exercise paramount regulatory supervision and control over official accounting records, which is the relief invoked here.

This case is not like those in which the courts, including the Supreme Court, have permitted two commissions, each having authority in the premises, to require a utility company to keep different sets of accounts, one to accord with the requirements of one commission, and another to meet the requirements of the other commission.[3] For those cases do not deal with

* Sitting by designation.

[1] 49 Stat. 1027, Judicial Code § 274d, 28 U.S.C.A. § 400.

[2] The order also dismissed the cross-claim of the Department of Public Utilities of Arkansas (now Arkansas Public Service Commission) but the cross-claimant did not appeal.

[3] Alabama Power Co. v. Federal Power Comm., 75 U.S.App.D.C. 315, 128 F.2d 280; Hartford Electric Light Co. v. Federal Power Comm., 2 Cir., 131 F.2d 953;

a conflict between jurisdictions over the sole right to prescribe official accounting methods, and go no further than to point out the right of a second commission to demand memorandum accounts to suit its purposes, which may differ from the accounts required by another commission which also has authority in the premises.

Here the company asserts its willingness to keep two differing sets of accounts in obedience to the dictates of the two commissions to which it is subject; but it alleges that this will satisfy neither commission, as each asserts the right to require the company to keep its dominant, principal, primary and basic accounts [4] in the manner specified by it. It is charged that each commission claims the authority, exclusive of the other, to require the company to keep, not just a set of memorandum accounts in the manner dictated by it, but official corporate accounts and records such as it prescribes. This would involve no practical difficulty if the requirements of the two commissions were identical; but when, as here, the two regulatory bodies insist on divergent and inconsistent action on the part of the company concerning the same subject matter, it is apparent that somehow the conflicting claims to the same right of control should be reconciled.

The confusion as to the issues which is apparent in the briefs filed with us should be disspelled by the realization that a public utility cannot keep more than one set of actual, official corporate accounts. Neither can any other corporation, for that matter. There must always be an official recording of figures to represent the actualities of the business, to constitute the genuine record of stewardship, the basis upon which representations are made as to the real results of the utility's operations and its true financial condition in reports to stockholders and to the public, and in financial statements to be submitted to prospective investors or creditors. Merely to state this preposition is to demonstrate its soundness, since any reasonable mind immediately perceives that actual transactions can be truly reflected by only one set of figures. A differing set shows only a hypothetical situation, demonstrating the distinction between what is, and what might have been.

Of course it is readily apparent that a public utility can prepare and submit, whenever necessary or required, pro forma accounts, showing what its status would have been had entries been recorded in its books other than those which actually were made; or what the result would have been had various items been placed under headings other than those under which they were actually placed in the official records; or what the situation would have been had this or that capital asset been eliminated by a charge to surplus or annual amortizing charges against earnings. Such alternative accounts are simply in the nature of memoranda, and can never be said to be the official corporate records.

But when a regulatory commission asserts the right to command that an item which another commission, also claiming jurisdiction, has treated as a valuable asset, be charged to surplus or amortized through charges to earnings, the commission which asserts such right to command unquestionably is saying that accounts kept in response to its orders must be, not mere memoranda, but the official corporate records. Such action goes beyond a claim of authority to make bookkeeping or accounting requirements, and touches actual property rights. In such circumstances, a utility should be able to learn from a declaratory judgment which commission has exclusive jurisdiction.

So it is necessary to examine the record to ascertain whether the nature of the appellant's property and business operations is such as to stamp it as a utility under the Arkansas regulatory act, and under the Federal Power Act, 16 U.S.C.A. § 791a et seq., as well, and consequently subject to regulation by both state and federal commissions. If so, then we must see if

Northwestern Electric Co. v. Federal Power Comm., 321 U.S. 119, 64 S.Ct. 451, 88 L.Ed. 596; Pacific Power & Light Co. v. Federal Power Comm., 9 Cir., 141 F.2d 602.

[4] These accounts are referred to throughout this opinion as the official corporate accounts.

the record discloses each commission to be claiming, to the exclusion of the other, the power to dictate and supervise official books of accounts. For if such conflicting claims are shown to exist, the two applicable statutes should have been reconciled by the District Court in a declaratory judgment.

Arkansas Power & Light Company is a public utility, incorporated under the laws of Arkansas and engaged in the business of generating, distributing and selling electric energy to consumers, and at wholesale to others who resell the energy. It owns no property and does no business outside of Arkansas with the exception of a small distribution extension into Louisiana. Ninety-eight percent of its electric facilities are used solely for the generation and distribution of energy to consumers. All of its wholesale deliveries are made in Arkansas. Less than two per cent of the company's electric facilities are used exclusively in the transmission of electric energy sold at wholesale in interstate commerce for resale.

Because the entire business of the appellant is transacted in Arkansas, and 98 per cent of its electric facilities are employed in a purely intrastate service of electric energy to consumers, it is a public utility subject to the jurisdiction of the Arkansas Public Service Commission under the provisions of Act 324 of the General Assembly of 1935. By its order of July 2, 1937, the state commission actually took and has since retained jurisdiction of the appellant's business. The state commission's order of that date was for the purpose of determining whether the rates, rules, practices, regulations and contracts of the appellant concerning electric service in Arkansas were reasonable and lawful. On November 10, 1943, the state commission directed that a hearing be held to establish the fair and reasonable rate base, and rate of return thereon, with respect to the appellant's electric property, and to fix reasonable rates to be charged by the appellant for electric service. The company was directed to show cause why the original cost of its electric property less accrued depreciation should not be established as the electric rate base and why its books and accounts should not be adjusted to conform to the state commission's uniform system of accounts. The order further required the appellant to show cause why it should not be required to write out of its accounts any amounts which did not reflect actual value.

Concerning the matters covered by its order of November 10, 1943, the state commission held extensive hearings. Finally, on June 24, 1944, it entered an exhaustive and carefully considered order. It determined that it had jurisdiction to prescribe the manner in which the company should keep its corporate books, accounts and records, and that the books, records and accounts prescribed by it should be the official corporate accounts and records of the company.[5] The order of the state commission then proceeds to prescribe the

---

[5] "This Department was created by Act No. 324 of the Acts of 1935, approved April 2, 1935. It is vested with power and jurisdiction to regulate all public utilities doing business in Arkansas with power to prescribe reasonable, uniform rates and practices. The Act expressly provides that the Department, upon its own motion, shall, upon reasonable notice after a hearing, 'find and fix just, reasonable and sufficient rates to be thereafter observed, and enforced and demanded by any public utility.' The Department is charged with the duty to 'ascertain and fix the value of the whole or any part of the property of any public utility.'

"Respondent is an Arkansas corporation and is engaged exclusively in intrastate business. The Department has jurisdiction to 'establish a uniform system of accounts' to be kept by Respondent and to 'prescribe the manner in which such accounts shall be kept.' The Department, therefore, finds that it has jurisdiction to prescribe the manner in which the Respondent keeps its corporate books, accounts and records, and that the books, records and accounts so prescribed by this Department shall be the official corporate accounts and records of the Company. Its jurisdiction over Respondent and its electric and other operations is complete and comprehensive and the Department is the only regulatory authority having such all-inclusive jurisdiction.

"The Department is given power to supervise, regulate, restrict and control the issuance of stock, bonds, notes and

method by which the company shall keep its accounts, and to establish its rate base on what is known in regulatory circles as the prudent investment standard. The prudent investment theory recognizes as the rate base the price paid as a result of arms-length bargaining for property having actual value which is devoted to the public use, even though that price exceeds the original cost incurred by him who first dedicated the property to public service. The excess is required to be set up in a separate account but is considered as representing actual value and as being a part of the rate base, upon which the utility is entitled to earn a fair return.

Although the federal commission had before it the state commission's order of June 24, 1944, which had definitely claimed exclusive jurisdiction over the official accounting records and had prescribed a prudent investment rate base, nevertheless it entered on September 27, 1944, a "Supplemental Order to Show Cause," the text of which is shown in the margin.[6]

The company conceived this to be an assertion by the Federal Power Commission that it possesses authority under the law to require the company to make in its official records the adjustments recommended by the staff, adjustments which are seen to be drastic departures from the company's

---

other evidence of indebtedness by all public utilities doing business in Arkansas.

"The Act expressly provides that 'every public utility, and every person or corporation, shall obey and comply with each and every requirement of the Act and of every order, decision, direction, rule or regulation made or prescribed by the Department in all matters herein specified, or any other matter in any way relating to or affecting the business of any public utility.'

"The foregoing powers of the Department were sustained by the Arkansas Supreme Court in Department of Public Utilities v. Arkansas Louisiana Gas Co., 200 Ark. 983, 142 S.W.2d 213."

Excerpt from order of Department of Public Utilities of Arkansas, dated June 24, 1944.

6 "It appearing to the Commission that:

"(a) On June 15, 1943, this Commission issued an order requiring Arkansas Power & Light Company ('Company') to show cause in writing, under oath, if any there be, why the Company should not be required to classify $16,610,196.85 in Account 107, Electric Plant Adjustments; $1,108,440.24 in Account 100.5, Electric Plant Acquisition Adjustments; $45,551,920.00 in Account 100.6, Electric Plant in Process of Reclassification; $2,293,567.58 in various Plant in Process of Reclassification Accounts within Account 108, Other Utility Plant; dispose of $2,402,515.42 in Account 107 and in the manner described in paragraph (1) of the order of June 15, 1943; submit plans for the disposition of the remainder of $14,207,681.43 in Account 107 of the $1,108,440.24 in Account 100.5, and prepare and submit to the Commission revised reclassification and original cost studies respecting the amounts established in Ac-

count 100.6 and the various Plant in Process of Reclassification Accounts within Account 108.

"(b) On September 18, 1943, the Company filed its response in which, in effect, it proposed to classify $7,791,086.11 of its electric plant at December 31, 1936, in Account 107 and $10,429,819.21 in Account 100.5 and Plant Acquisition Adjustments Accounts within Account 108.

"(c) Thereafter conferences were held between representatives of the Company, the staff of this Commission, and the staff of the Department of Public Utilities of Arkansas, but said conferences failed to produce complete agreement on the issues.

"(d) On January 13, 1944, the Commission set the issues raised by the order of June 15, 1943, and the Company's response thereto, for public hearing on February 16, 1944.

"(e) The hearing was postponed from time to time, in order not to interfere with a rate proceeding being conducted by the Arkansas Department of Public Utilities involving the rates of the Company, and on May 13, 1944, the Commission entered an order postponing the hearing 'pending further order of the Commission.'

"(f) The staff of the Commission in the meantime has been engaged in making further studies of the Company's response and of other data furnished the Staff by the Company, such other data being in the nature of an amendment to the Company's response which have not been formally filed with the Commission by the Company.

"(g) As a result of the additional studies, the staff of this Commission has submitted a supplemental report on the reclassification and original cost studies of electric plant of the Company, which report is to be served herewith upon the

then existing accounting situation which had come into being through the compulsion of the order of the Arkansas commission. Alarmed at the prospect of being forced to disobey one of the two commissions and so to violate one of the two statutes whatever course it might take, the company complained to the court below that the two regulatory bodies, each proclaiming its paramount power to regulate, had placed it in a dangerous dilemma from which it could be rescued only by a judicial determination concerning the contending claims of the two commissions.

The suit was filed in the District Court of the United States for the District of Columbia against Federal Power Commission and the Department of Public Utilities of Arkansas.[7] The complaint alleged that the company, which is a substantial electric

Company and is made a part hereof by reference.

"(h) In the supplemental report the staff recommends that the Company be required to classify $11,881,199.23 in Account 107, Electric Plant Adjustments, and $9,293,057.46 in Account 108.15, Common Utility Plant Acquisition Adjustments, all as more fully set forth at pp. 4 to 16 of the supplemental report.[1]

"(i) The staff also recommends in the supplemental report that the Company be required to dispose of the $11,881,-199.23 recommended for classification in Account 107 as follows:

| | |
|---|---|
| "To Account 140, Unamortized Debt Discount and Expense, and Account 271, Earned Surplus, in appropriate amounts, representing unamortized debt discount and expense incurred in connection with the issuance as of October 1, 1926, of First and Refunding Bonds, 5% Series, due 1956, in the principal amount of $18,000,000 | $1,497,546.00 |
| "To Account 150, Capital Stock Discount, representing discount on capital stock | 75,814.12 |
| "To Account 151, Capital Stock Expenses, representing expenses associated with the issuance of capital stock | 254,442.06 |
| "To Account 146, Other Deferred Debits, and Account 271, Earned Surplus, in appropriate amounts, representing deferred franchise expenses erroneously capitalized as cost of plant | 36,960.00 |
| "To Account 250, Reserve for Depreciation of Electric Plant, representing unrecorded retirements | 874,964.04 |

| | |
|---|---|
| "To Account 271, Earned Surplus, or Account 270, Capital Surplus, if properly created for that purpose, representing write-ups and other erroneous charges in the Company's plant account | 9,141,473.01 |
| Total | 11,881,199.23 |

"(j) In its supplemental report the staff recommends that the Company be required to submit a plan for the disposition of the $9,293,057.46, to be classified in Account 108.15.

"The Commission *orders* that:

"(A) At the public hearing to be held in the above-entitled matter, which hearing has been indefinitely postponed, the issues to be determined shall be those raised by the Commission's order of June 15, 1943, as supplemented by this order, and the Company's response to the order of June 15, 1943.

"(B) The Company shall file a response, under oath, within sixty days after the date of this order, to the recommendations contained in the supplemental report herewith to be served upon the Company, including a plan for disposition of amounts in the adjustment accounts. In such response the Company shall set forth any amounts disposed of since December 31, 1936, which are recommended for classification by the staff in Accounts 107 and 108.15 together with the manner in which such disposition was effected.

"(C) The Secretary serve upon the Company a copy of the supplemental report herein referred to concurrently with the service on the Company of this order."

[7] After the suit was filed, the official designation of Department of Public Utilities of Arkansas was changed to "Arkansas Public Service Commission." It will be referred to in this opinion as "state commission."

[1] Account 108.15, Common Utility Plant Acquisition Adjustments, a subaccount of Account 108, Other Utility Plant, is used for the purpose of identifying plant acquisition adjustments arising through acquisitions of properties of more than one utility department.

utility in Arkansas, is a "public utility" in the meaning of the Arkansas statute regulating public utilities, and that, therefore, the state commission is exercising regulatory control over its accounting records and practices; that the state commission has ordered that the company's accounts shall be kept and treated in the manner prescribed by it, and that the accounts so kept and treated shall be the official corporate accounting records of the company.

It is further alleged in the complaint that, after the state commission had ordered changes in its accounting procedure and had established a new rate base and instituted new rates and the company had complied, the Federal Power Commission asserted that it alone possesses the sole, exclusive and paramount jurisdiction and authority to regulate the official corporate accounting records and practices of the company. The federal commission's representatives made studies of the company's properties and books and thereafter recommended that the federal commission require dispositions of amounts in various accounts quite at variance with the treatment already given, and currently being given, those accounts pursuant to the mandate of the state commission. While the federal commission had not then conducted formal hearings on its staff's report, the complaint alleged that the company had been ordered to show cause why it should not make the adjustments recommended by the federal commission's employees, which adjustments would be violative of the order already entered by the state commission.

Being placed in such a dilemma, and faced with the prospect of incurring heavy penalties should it disobey one of the commissions, and so inevitably violate either the federal or the state statute, and finding it impossible to submit to the authority of both commissions since their claims were in hopeless conflict, the company turned to the Declaratory Judgment Act, presented its problem to the court, and asked to be told authoritatively which of the two commissions actually has, when the federal and state statutes are considered together, the legal right of regulatory control over its official accounts, a right which is necessarily exclusive.

The Arkansas commission came into court voluntarily, alleging that it has the exclusive duty and power of supervisory control over the company's official accounting procedure. It filed a cross-claim against the federal commission and prayed for a judicial declaration that the exclusive jurisdiction to regulate, supervise and control the official records and accounts of the company is vested in the State of Arkansas and its public service commission, and not in the Federal Power Commission.

Thereupon the Federal Power Commission pleaded that it alone has the power claimed by the Arkansas body but that, because it has not finished the process of exercising that power upon which it has already embarked, the District Court cannot resolve the difficulty by deciding as a matter of law where the exclusive right of control lies. It will thus be seen that the statement of an irreconcilable dispute between the two jurisdictions set forth in the complaint was shown by the affirmative pleadings of the two commissions to be an actuality.

In these circumstances the question was, of course, whether a justiciable controversy appeared concerning which a declaratory judgment might properly be rendered. The District Court apparently regarded the complaint as an attempt to review a definitive order of the Federal Power Commission. The reasoning used by it in reaching the conclusion that it did not have jurisdiction over the subject matter of the complaint and cross-claim, and that therefore the motion to dismiss filed by the Federal Power Commission should be granted, is thus stated in its opinion [60 F.Supp. 907, 908]:

"Sec. 313(b) of the Federal Power Act, 16 U.S.C.A. § 825l(b), provides that any party to a proceeding under this Act, aggrieved by an order issued by the Commission in such proceeding, may obtain a review of such order in an appropriate Circuit Court of Appeals, by filing in such court a written petition praying that the order of the Commission be modified or set aside. This method of judicial review is exclusive. (Cases cited.) The Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, does not confer upon the court juris-

diction which it does not otherwise possess. (Cases cited.) This court therefore does not have jurisdiction over the subject matter of the complaint."

In support of this holding of the court below, the federal commission in its argument before us points out that the complaint shows it has made no appealable order—in fact, has made no order at all—concerning the appellant's accounts. It says the matters pending before it are merely recommendations of its staff of accountants which, after hearings are held, it may or may not adopt. Hence it argues that, as its administrative process is as yet incomplete, recourse may not be had to any court by a utility which is dissatisfied with its staff's recommendations. The only remedy of one who considers himself aggrieved by the report of the federal commission's staff, it is said, is to wait until the federal commission has entered a final order, and then to appeal to a circuit court of appeals, the only form of review permitted by the Federal Power Act.[8]

This argument is valid of course with reference to orders issued by the federal commission concerning the form of accounts to be kept, concerning accounting practices and procedure, and concerning the disposition of amounts in various numbered accounts, because such orders may be reviewed only in the way the statute permits. It must indeed be admitted to be a valid argument concerning any actual exercise by the federal commission of supervisory control over utility accounting books and records.

But the argument is not valid here, because it misses the actual point involved. It ignores the fact, which has been pointed out earlier in this opinion, that this case does not have to do with bookkeeping entries or accounting problems as such, and that the complaint in this case does not seek a judicial review of the manner in which the Federal Power Commission has exercised regulatory control over the company's accounting records.

It is plain, therefore, that the contention of the federal commission to the effect that only its final orders may be reviewed, and then only by the exclusive method of appeal provided by the statute, overlooks the real nature of the controversy as we view it. For, as said before, this appeal is not concerned with the propriety of an actual order of the federal commission concerning the classification or treatment of accounts; it involves only the purely legal problem of determining, after considering together the applicable state and federal statutes, whether the federal commission or the state commission has the exclusive right to control the official accounting records of the company. It is alleged that both commissions claim to have that exclusive right, so this case involves only the search for the proper lodgement of the power of control, and has nothing to do with the manner in which the right of control has been or may be exercised by either commission.

As we have pointed out heretofore, if the record shows both commissions to be claiming to have the sole power and authority of supervisory and regulatory control over the official accounting records and methods of the company, an actual controversy was presented; and it was the right and duty of the District Court to take cognizance of it for the purpose of construing the statutes of the two sovereignties, and then to say authoritatively which commission, under the harmonized statutes,

[8] Title 16, U.S.C.A. § 825l (b), is in part as follows:

"(b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the Circuit Court of Appeals of the United States for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be served upon any member of the Commission and thereupon the Commission shall certify and file with the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part. * * *"

has the regulatory power which both assert, and which only one can exercise.

It is pertinent, therefore, to ascertain whether the record disclosed such a controversy, that is to say, whether it shows that each commission is contending that its organic statute gives it exclusive authority over the company's accounts. It matters not that one of them has not yet entered a definitive order concerning the accounting records; it is enough if the commission which has not entered such an order contends that it has the right to do so, to the exclusion of the authority claimed by the other.

Examination of the pleadings reveals the fact that the federal commission does assert the right to dictate, prescribe and control the utility's official accounting records. We find the complaint stating that the state commission is authorized and empowered by law to require the appellant to keep official books of accounts according to its uniform system and its rules regulating accounting. It is averred in the complaint that the state commission has asserted and exercised that authority and power, and that the appellant has obeyed its orders in that regard. The complaint further alleges that in ordering the appellant to respond to the recommendations of its staff's report, and to show cause why it should not make the accounting adjustments proposed by the staff, the federal commission is manifesting its intention to order changes in the official accounts which are now in the form required by the state commission, and thus in effect is proposing to reject and overrule the state commission's order.

This would seem to be a very definite pleading of an actual controversy, in that it is charged that both commissions claim the power and authority to be the sole arbiter as to the official corporate books of accounts. But, in its argument, the federal commission characterizes the allegations of the complaint to the effect that it will prescribe, control and regulate the official accounting records as nothing more than the appellant's prophecy concerning its future action. It says these allegations, therefore, do not amount to facts well pleaded and are not admitted by the federal commission's motion to dismiss. There would be force in this argument were it not for the fact that the federal commission's motion to dismiss contains this language:

"No claim is stated upon which relief can be granted, since the Commission's accounting authority with respect to 'public utilities' including plaintiff, is not affected by any accounting requirements prescribed under State law."

We regard the quoted words as an affirmative assertion by the federal commission of a claim to the exclusive right to supervise, regulate and control the appellant's official accounting records, in spite of the allegations in the complaint that the state law confers, and the state commission claims and has exercised, exclusive authority over such official records. It will be noted that the statement above quoted from the motion to dismiss is made by the federal commission itself, and not by its staff. It constitutes an authoritative, affirmative statement that the federal commission believes it has, and will exercise, plenary and exclusive regulatory power over the company's official records of its accounts and business.

In attempted avoidance of a declaratory judgment, the appellees in effect say it is impossible at this point for it to be known whether they will sustain the original cost recommendations in their staff's report; and so the argument is that no controversy or conflict between the commissions is disclosed by the complaint, but only a difference between the Arkansas commission and the staff of the federal agency. Although the complaint alleges the federal commission will impose its original cost theory on the company, that commission replies that the statement is a mere prediction; but without denying its claim of right to override the orders of the state commission. We regard the allegations in the complaint as something more than prophecy. They are based upon the well-known fact that the Federal Power Commission is recognized as being an exponent of the original cost theory of establishing a rate base. It has been so described by the Su-

preme Court.[9] The federal commission uniformly has construed its system of accounts to require that the excess of prudent investment over original cost be written off.[10]

Scarcely more than a month before the federal commission filed its motion to dismiss the complaint in this case, and in support of that motion argued that it might or might not sustain the theory of its staff which would require, inter alia, the sum of $6,947,058.92, by which prudent investment exceeds original cost, to be charged off or amortized, it had written a lengthy opinion,[11] in which it considered the proper accounting treatment to be accorded a large sum which it had ordered The Montana Power Company to classify in Account 100.5. The Commission's opinion said:[12]

"The company contends that the cost of intangibles should remain on its books, unamortized and undiminished, indefinitely in the future. * * *

"Consistent with our action in similar cases heretofore decided, therefore, we reject respondent's contention that the amounts should be kept in the accounts indefinitely without diminution by amortization or otherwise. Considering all the facts in this case, amortization over a reasonable period of time seems proper. Accordingly we shall order the amount of $5,086,428.48, includible in Account 100.5, to be amortized. * * * This is in accordance with our determination in the Pacific Power & Light Company Case in which we were sustained by the circuit court."

In another decision, the federal commission had before it the question of what disposition should be made of amounts in Account 100.5.[13] It reiterated the statement made in the Pacific Power & Light case and another earlier case that the elimination of the amounts in Account 100.5 is mandatory under its system of accounts. The staff's report in this case reflects the policy consistently adhered to and recently reaffirmed by the Federal Power Commission.

There can be no doubt as to the position of the Federal Power Commission as to

---

[9] Northwestern Electric Co. v. Federal Power Comm., 321 U.S. 119, 123, 64 S. Ct. 451, 881 L.Ed. 596.

[10] In the Matters of St. Croix Falls Minnesota Improvement Co. and St. Croix Falls Wisconsin Improvement Co., 43 PUR (NS) 1, 11; In the Matter of The California Oregon Power Co., 47 PUR (NS) 193, 195; In the Matter of The Montana Power Co., 57 PUR (NS) 193, 226.

[11] Re The Montana Power Company, Opinion No. 120, Feb. 13, 1945, 57 PUR (NS) 193.

[12] 57 PUR (NS) 226.

[13] In its opinion in Re The California Oregon Power Company, Opinion No. 87, 47 PUR (NS) 193, the Commission said:

"[1] In its revised original cost study COPCO established the amount of $828,684.97 in Account 100.5, Electric Plant Acquisition Adjustments. There is no dispute as to the origin or classification of this amount. It represents the excess of acquisition cost over original cost of operating units or systems purchased. The issue is whether such amount should be properly amortized or permitted to remain indefinitely in Account 100.5.3

"This problem was before us very recently in the St. Croix Cases 4 and again in Re Pacific Power & Light Co.5 In the case before us we adhere to the conclusions therein reached that:

"'Except for fictitious or paper increments, which should be charged off at once (American Tel. & Tel. Co. v. United States, 1936, 299 U.S. 232, 240, 57 S.Ct. 170, 81 L.Ed. 142, 16 PUR (NS) 225), provision in advance of retirement should be made. In fact, such provision is mandatory under our, and most, if not all, systems of accounts. In practice, tangible plant assets are generally depreciated, whereas intangible assets are amortized. Accordingly, amounts in Account 100.5 should either be charged off immediately or spread over a reasonable period of time, if proper public utility accounting practices are to prevail.'"

---

"3 Account 100.5 provides that the amounts recorded therein with respect to each property acquisition 'shall be depreciated, amortized, or otherwise disposed of, as the Commission may approve, or direct.'

"4 (1942) F. P. C. Opinions Nos. 72 and 72-A, 43 PUR (NS) 1, 11.

"5 (1942) F. P. C. Opinion No. 84, 46 PUR (NS) 131."

whether it claims authority superior to that of the state commission, as charged in the complaint. Not only is that position affirmatively stated in the appellees' motion to dismiss, as we have shown, but it is also unmistakably set forth in the brief filed with us by the federal commission. After quoting § 301(a) of the Federal Power Act, 49 Stat. 854, Title 16, U.S.C.A. § 825(a), the appellees state that its language gives them comprehensive authority in the regulation of the accounting of public utilities. The appellees then add this significant statement:

"There is no basis in the Act for the contention that the federal authority in this regard is subordinated to or affected by such state accounting requirements. The Act also furnishes no basis for the attempted distinction between the 'primary, dominant and principal books of accounting' referred to in the complaint and the accounts to be kept in compliance with the Commission's requirements."

Again we say that we do not have before us at this time the question to which the foregoing argument is addressed, but we reproduce the appellees' language because we regard it as a plain statement by the federal authorities that they claim the right to prescribe and regulate the primary, dominant and principal books of accounts, which are the official records.

In view of the nature of the report and recommendations made to the federal commission by its own representatives, in view of its consistent adherence to the original cost standard, in view of the unmistakable tenor of its order of September 27, 1944, and because of its affirmative pleading, and its argument here, it would be unrealistic to entertain any doubt as to whether the federal commission not only claimed, but fully intended to exercise, sole and exclusive jurisdiction over the official accounting records in a manner in conflict with the order already made by the state commission.

It must be concluded, therefore, that the record disclosed to the District Court an actual controversy, which involved conflicting interpretations of the two statutes, the state commission claiming under the Arkansas regulatory enactment the sole right to supervise and regulate the company's accounts, and the federal commission claiming under the Federal Power Act the same exclusive right.

■ The Declaratory Judgment Act of 1934, invoked by the appellant, is remedial in nature, and uniformly has been construed liberally. It can be applied only in a situation where an actual controversy exists, because the Constitution restricts the exercise of judicial power to cases and controversies. The word actual is one of emphasis rather than one of definition.[14] A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. In this case, which is clearly an adversary proceeding, a sharp controversy is described by the pleadings. It is justiciable, in that the dispute is not hypothetical or abstract. The controversy in the present case is quite definite and concrete, for it puts in bold relief a specific question, arising under statutes from two different jurisdictions which affect one situation; that is, which commission is entitled exclusively to control the company's accounts.

■ This controversy touches the legal relations of parties having adverse legal interests, just as the Supreme Court has said the controversy must do if it is to be held justiciable under the Declaratory Judgment Act.[15] This is so because the legal relations of the two commissions, which loudly assert adverse legal interests, are involved; and, more important still, this controversy touches the legal relations of the company with the two commissions. It has been further held that to be justiciable the controversy must be real and substantial, admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the

---

14 Ætna Life Insurance Co. of Hartford, Conn., v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

15 Ætna Life Insurance Co. v. Haworth, supra.

law would be upon a hypothetical statement of facts. Nothing hypothetical appears here; on the contrary the dispute is real and substantial and admits of specific relief through a decree adjudicating the scope of the power of each commission under the factual situation disclosed. Under these principles governing the application of the Declaratory Judgment Act, in view of the nature of the controversy shown by the record, we have no doubt that the judicial function may be appropriately exercised.[16]

The proposition that the Declaratory Judgment Act does not enlarge the jurisdiction of the District Court, which is urged upon us by the appellees, is not applicable. For the basic power of the court certainly includes an interpretation of statutes such as is involved in the present situation, unless that authority is cut off by the method of review of Federal Power Commission orders afforded by the Power Act. It is our view that the fundamental jurisdiction of the District Court to decide a case such as this, which involves no review of a Commission order, is not affected by the exclusive appellate procedure of the Federal Power Act.

It is peculiarly appropriate to invoke the Declaratory Judgment Act when one is uncertain of his rights and may suffer disastrous consequences if he were forced to await the hostile move of an adversary. It is generally agreed by bench and bar that, in providing a remedy to one thus unfortunately situated because of uncertainty as to the nature of his rights, the enactment of the Declaratory Judgment Act was a progressive move, and that the statute is a useful piece of legislation, leading to an early determination of actual disputes, avoiding expensive multiplication of litigation, and making it unnecessary for him who is uncertain as to his legal status to gamble for stakes in the form of substantial penalties should his guess be wrong.

It seems to us, consequently, that the present case presents an unusually appropriate opportunity for the exercise of the judicial function in the manner contemplated by the Congress when it enacted the Declaratory Judgment statute. If the company were required to await the decision of the Federal Power Commission, which inevitably would be contrary to that of the state commission, and then to decide for itself the important legal question as to which commission under the two statutes involved is its real master, it would be faced with the dangerous possibility of making an erroneous interpretation of the two statutes and, because of it, of suffering pains and penalties which follow a violation of the law, which by that time the company already would have committed.

This conclusion is not in derogation of the exclusive method of review stipulated in the Federal Power Act, as we have already pointed out. As the federal commission has made no final order, there is nothing from which an appeal could be taken by the company under the statutory scheme of appeal.

It is argued that Arkansas, through its public service commission, could intervene in the proceeding before the Federal Power Commission and there exhaust its administrative remedy; and, if dissatisfied with the decision of the Federal Power Commission, appeal to a cir-

---

[16] "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, 288 U.S. 249 at page 263, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191; Tutun v. United States, 270 U.S. 568, 576, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738; Fidelity National Bank and Trust Co. of Kansas City v. Swope, 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959; Old Colony Trust Co. v. Commissioner, supra, 279 U.S. 716, at page 725, 49 S.Ct. 499, 503, 73 L.Ed. 918. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, 28 U.S. at page 264, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191." Ætna Life Insurance Co. v. Haworth, supra, 300 U.S. at page 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000.

cuit court of appeals. Such a theory presumes that a sovereign state must appear before a federal administrative body in order to have determined the legal effect of one of its own statutes considered in connection with a related federal statute. This proposes a novel extension of federal administrative power. Even if it be said that the Federal Power Commission has the right to exercise the judicial function of interpreting its own organic act, it could hardly be added that that agency also possesses the exclusive right to interpret a statute of one of the States of the Union, and to decide the relation between that state legislation and its own Act.[17] This would be contrary to the purpose for which the Congress enacted the Federal Power Act, which was to supplement, not supersede, the regulatory power of the states.[18]

▉ We do not regard as a valid argument against the power of the District Court to declare the rights of the parties, the assertion that the company could get, by appealing to a circuit court of appeals, after the federal commission has passed on the question of its own and the state commission's jurisdiction, the judicial determination of the conflict between regulatory jurisdictions which it seeks in the present suit. Existence of another route to the same goal does not preclude a litigant from invoking the Declaratory Judgment Act.[19] And, as the District Court's exercise of jurisdiction in this case will not impinge upon the provision of the Federal Power Act concerning appeals, since that provision relates only to the review of final, definitive orders of the federal commission,[20] we see no reason to deny to the ap-

[17] In Macauley v. Waterman Steamship Corporation, 66 S.Ct. 712, it was held that the Tax Court, an administrative body charged by the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, with determining certain factual questions thereunder, may construe the Act by deciding whether it applies to a given situation. The appellees suggest, therefore, that they have the same right with respect to the Federal Power Act. This argument overlooks the fundamental fact that something more is at stake here than merely to gauge the sweep of the federal statute. For it is one thing for a federal administrative agency to rule as to the coverage of its own act when that act stands alone. It is quite another for the agency to decide whether its organic act overrides the statute of a different sovereignty which already has been applied by the state authorities to the situation which the agency desires to control by applying the federal act. That is a task for the courts. We do not understand the Macauley case as extending to a federal agency the unprecedented power of exercising such a clearly judicial function.

[18] Connecticut Light & Power Co. v. Federal Power Comm., 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150.

[19] Rule 57, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Ætna Casualty & Surety Co. v. Yeatts, et al., 4 Cir., 99 F.2d 665; Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965; Doehler Metal Furniture Co., Inc. v. Warren, 76 U.S.App.D.C. 60, 129 F.2d 43; State Mut. Life Assur. Co. of Worcester, Mass. v. Webster, et al., 9 Cir., 148 F.2d 315; Moore's Federal Practice Under the New Federal Rules, v. 3, p. 3194; Borchard, Declaratory Judgments, 2d Ed., pp. 342-4, where it is said:

"Thus, a court should not by declaratory judgment ordinarily interfere with the jurisdiction of an administrative commission, especially where the statute is not ambiguous and where the jurisdiction of the commission depends on a jurisdictional fact, such as the weight of a truck which the commission must in first instance determine. So, when the statute provides that an appeal from an administrative determination may be taken only in a certain way and to a certain court, such as appeal from the National Labor Relations Board to the Circuit Court of Appeals, it would have been wrong for another court, like a United States District Court, to interfere and entertain a suit for a declaration that the National Labor Relations Board had no jurisdiction over a particular case.

"But this is quite different from asserting that whenever there is an administrative method of relief it is necessarily exclusive. That will depend on the presumed intent of the legislature. If the question is one of law or of the jurisdiction of the commission, it may be judicial economy and wisdom to decide the issue by declaration before the administrative channel has been invoked or exhausted."

[20] Federal Power Comm. v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408.

pellant and the two commissions the speedy, relatively inexpensive answer to a vexing problem which will be afforded by a declaratory judgment in this case.

We have noted the argument of the appellees to the effect that the Federal Power Act confers on the federal commission exclusive jurisdiction over the company's official books of accounts, regardless of the state law. Whether it does or not we are not called upon to say. As the District Court considered itself without jurisdiction over the subject matter and so dismissed the complaint and cross-claim, this appeal has to do only with the propriety of that action, and does not permit us to examine the merits of the case. In this connection we have not failed to observe that, after stating its conclusion that a cause of action on which relief could be granted was not pleaded, the District Court's opinion goes on to say:

"Finally, the substantive question raised by the plaintiffs and cross-claimants appears to have been settled adversely to their contention. Northwestern Electric Co. v. Federal Power Commission, 321 U.S. 119, 64 S.Ct. 451, 88 L.Ed. 596."

That this was not intended to be a decision on the merits we have no doubt, as the Court already had expressly disclaimed the right to make such a determination. Moreover, it is not to be supposed that the trial justice, had he so intended, would have dismissed with a casual observation important questions of law which seem not to have been heretofore discussed by any court, with the exception of a brief mention by the Court of Appeals for the Fifth Circuit in Alabama Power Company v. Federal Power Commission.[21]

We think a justiciable issue was disclosed and that it was error to grant the motion to dismiss. The judgment appealed from is therefore reversed and the cause is remanded. The District Court should set aside its order dismissing the complaint, then deny the motion to dismiss and proceed to determine the controversy. While the state commission did not appeal from the order dismissing its cross-claim, probably the District Court on its own motion will set aside that order also.

Reversed.

MORRIS, District Judge (sitting by designation) dissenting.

I regret that I cannot agree with the majority. The Arkansas Power and Light Company admittedly is a "public utility" within the meaning of the Federal Power Act. It is also admittedly a "licensee" within the meaning of that Act.[1] The Federal Power Commission is given explicit power and jurisdiction to require every licensee and every public utility to make, keep and preserve such accounts as the Commission may by rules and regulations prescribe as necessary or appropriate for the purposes of the administration of the Act, and is specifically authorized to prescribe a system of accounts to be kept by licensees and public utilities.[2] It is expressly provided, however, "that nothing in this chapter shall relieve any public utility from keeping any accounts, memoranda, or records which such public utility may be required to keep by or under authority of the laws of any State."[3]

The Power Company here has been required by the Department of Public Utilities of the State of Arkansas to make and keep certain accounts in accordance with the laws of that State and regulations pursuant thereto. The Federal Power Commission has directed the Power Company to show cause why certain of its accounts should not be made to conform with certain recommendations made by members of the Commission's staff, and fixed a hearing for that purpose. The recommendations are that the assets of the Power Company be shown at an "original cost" figure substantially less than the "prudent investment" or "fair value" figure which is required by the Department of Public Utilities of the State of Arkansas. In this situation, and before

---

21 134 F.2d 602.

1 Exhibit 8 to complaint, par. 3, sec. 2. "The respondent [Arkansas Power and Light Company] also owns and operates two hydroelectric projects licensed under the Federal Water Power Act of 1920 [16 U.S.C.A. § 791 et seq.]."

2 Sec. 301(a), Federal Power Act, 16 U.S.C.A. § 825 (a).

3 Id.

any hearing had been had before the Federal Power Commission, the Power Company filed this suit in the District Court against the Federal Power Commission and its members and the Department of Public Utilities of the State of Arkansas and its members, seeking injunctive relief against the Federal Power Commission and a declaratory judgment to the effect that the Federal Power Commission has no authority under the Federal Power Act to require the Power Company to make and keep the accounts here involved. In the event it be determined that the Federal Power Commission has such authority, then the complaint seeks a declaratory judgment that the action of the Department of Public Utilities of the State of Arkansas is void as being repugnant to the Commerce Clause of the Constitution of the United States. Art. 1, § 8, cl. 3. The District Court, upon motion, dismissed the complaint, holding that it was without jurisdiction in the premises. From this action the Power Company appealed. The Department of Public Utilities of the State of Arkansas, which had voluntarily appeared in the court below, did not appeal, but the Attorney General of the State of Arkansas appeared as amicus curiae, supporting the position of the Power Company.[4]

It is, of course, not disputed that statutory provision is made for the judicial review of any final action by the Power Commission.[5] It is insisted, however, that such statutory review is not adequate in the present situation in that the Power Company finds itself in a dilemma brought about by the contentions of the Arkansas Department and the Power Commission that each has exclusive control over the same accounts of the Power Company; that to obey one will result in penalties from the other, and furthermore that the Congress had no intention of giving such exclusive control to the Commission with respect to accounts of a public utility controlled by state authority. This is based upon the proviso in Section 301(a) of the Federal Power Act, which has been mentioned, that public utilities shall not be relieved from keeping accounts required under authority of the laws of any State read in connection with Section 201(a) of that Act.[6] Stated somewhat differently, the contention is that the declaration of policy in 201(a) to the effect that the federal regulation was to extend only to those matters which are not subject to regulation by the States extends to and controls the power given to the Power Commission to control *accounts*. It seems to me rather late in the

---

4 Subsequent to the order of the District Court dismissing the complaint, the Department of Public Utilities of the State of Arkansas, the name of which has been changed to Arkansas Public Service Commission, and its members, and the State of Arkansas have intervened in the proceedings pending before the Federal Power Commission. Appendix, appellee's brief, pp. 40-41.

5 Sec. 313 (a), Federal Power Act, 16 U.S.C.A. § 825*l* (a). "Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. * * * No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.

"(b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in

the Circuit Court of Appeals of the United States for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * *"

6 16 U.S.C.A. § 824 (a). "It is hereby declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in sections 824–825r of this title and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States."

day for this to be urged as the basis for a District Court taking jurisdiction in a case where there is admittedly statutory provision for an administrative hearing with judicial review. In the first place, it has been repeatedly held that the language employed in Section 201(a), just mentioned, was intended as a limitation on the federal authority so that it would extend only to the generation, transmission and sale of electric energy, which was not subject to regulation by the State, and that such language was not intended to be a limitation upon the power of the Commission with respect to the corporate financial arrangements of the utilities engaged in such production and distribution. Such was held to be the law in Jersey Central Power & Light Co. v. Federal Power Commission, 319 U.S. 61, 74, 63 S.Ct. 953, 960, 87 L.Ed. 1258. In that case, the Court was concerned with Section 203(a).[7]

In the opinion, however, it is stated:

"This conclusion finds strong support in the fact that not only Section 203(a), here under discussion, but Sections 204(a), 16 U.S.C.A. § 824c(a), 208, 16 U.S.C.A. § 824g, and *301(a)* regulate matters obviously subject to state regulation. If the scope of the limitation was as broad as petitioners contend, none of these sections just referred to would be effective. Section 203 (a) would be a nullity as of course the disposition and acquisition of facilities, merger, consolidation or purchase of securities by their utilities may be regulated by the States. But this does not follow where a specific limitation is placed on the issue of securities by section 204."[8] [Emphasis supplied.]

It has been held that Section 201(a) does not qualify Section 301(a) where the latter was directly involved. Northwestern Electric Co. v. Federal Power Commission, 9 Cir., 125 F.2d 882, 885. It is of striking significance that, where the Congress intended to limit the powers of the Commission with respect to corporate financial matters, which were controlled by state authority, it expressly made such limitation. Section 204(f).[8]

It is insisted, however, that the character of the accounts involved here are such as constitute what the Power Company terms as their "primary, dominant and principal books of account," and which in the Court's opinion are variously denominated "dominant, principal, primary and basic accounts" and as "official corporate accounts." The postulate is that one authority, and only one, can control the keeping of such accounts, and that the exercise by one authority necessarily excludes the exercise of authority by the other. It is further asserted by the Power Company, and accepted in the Court's opinion, that the Power Commission here is seeking to exercise its authority *to the exclusion of the right of the Arkansas Department to require accounts involving the same subject matter and to control those so required.* In so far as the accounts here involved are concerned, I cannot agree with either of these conclusions. The Federal Power Act nowhere recognizes any category of accounts as "primary, dominant and principal books of account" or "dominant, principal, primary and basic accounts" or "official corporate accounts," nor does the Act expressly exempt such accounts from the authority of the Power Commission. It has been repeatedly determined that accounts of the character here involved of a

---

[7] 16 U.S.C.A. § 824b (a). "No public utility shall sell, lease, or otherwise dispose of the whole of its facilities subject to the jurisdiction of the Commission, or any part thereof of a value in excess of $50,000, or by any means whatsoever, directly or indirectly, merge or consolidate such facilities or any part thereof with those of any other person, or purchase, acquire, or take any security of any other public utility, without first having secured an order of the Commission authorizing it to do so. * * *"

[8] 16 U.S.C.A. § 824c (a). "No public

utility shall issue any security, or assume any obligation or liability as guarantor, indorser, surety, or otherwise in respect of any security of another person, unless and until, and then only to the extent that, upon application by the public utility, the Commission by order authorizes such issue or assumption of liability. * * *

"(f) The provisions of this section shall not extend to a public utility organized and operating in a State under the laws of which its security issues are regulated by a State commission."

"public utility" or "licensee" may be required and controlled by the Power Commission, and that notwithstanding accounts covering the same subject matter are required to be kept and controlled by a competent state authority on a different basis. In Northwestern Electric Co. et al. v. Federal Power Commission, 321 U.S. 119, 64 S.Ct. 451, 454, 88 L.Ed. 596, the Supreme Court affirmed Northwestern Electric Co. v. Federal Power Commission, 134 F.2d 740, decided by the Circuit Court of Appeals for the Ninth Circuit, in which it was held that the Power Commission had the authority to require and control accounts respecting the valuation of assets on a basis of "original cost" notwithstanding the sanction by a state authority of a different valuation on a "prudent investment" basis. Mr. Justice Roberts, speaking for the Court, stated in the opinion:

"Nothing in the statute or the order prevents Northwestern keeping other accounts if it so desires which will give information with regard to estimated present appreciated value of its assets."

In Pacific Power & Light Company v. Federal Power Commission, 9 Cir., 141 F.2d 602, 605, respecting an order of the Power Commission fixing the valuation of the assets of the public utility there involved on an "original cost" basis, the Court pointed out that the order of the Power Commission does not prohibit the keeping of other accounts on a "present fair value" basis. In Louisville Gas & Electric Co. v. Federal Power Commission, 129 F.2d 126, 133, the Circuit Court of Appeals for the Sixth Circuit, dealing with a licensee, stated:

"Section 301 (a) of the 1935 Act provides that every licensee and public utility shall make, keep, and preserve for such periods such accounts, records of cost, accounting procedures, etc., as the Commission may, by rules and regulations, prescribe. Furthermore, the provision that nothing in the Act should relieve a public utility from keeping such accounts as are required by the laws of the state, impliedly, if not expressly, discloses a purpose that the Commission shall prescribe such accounting system, notwithstanding that the state has required a like or a different system of accounts."

The authority of the Commission to require and regulate such accounts is recognized in various other jurisdictions.[9] This Court expressly sanctioned the exercise of such authority over the accounts of a "licensee" in Alabama Power Co. v. Federal Power Commission, 75 U.S.App.D.C. 315, 320, 128 F.2d 280, 285, wherein it was stated:

"The language of the statute and the clearly stated powers and duties of the Commission leave no doubt that, while a division of authority between it and appropriate state agencies is contemplated, so far as concerns regulation, the Commission is vested with summary and unlimited powers over the accounts of its licensees to the extent necessary to insure proper performance of its duties. If the State, in the proper performance of its duties, wishes to require the keeping of a separate set of books no doubt it can do so. And if the Company wishes to keep a third set for its own purposes there seems to be nothing in the law to prevent it from doing so. But two things are certain: (1) The statute clearly contemplates that the Commission may require the licensee to establish and maintain accounts; (2) the licensee must allow the Commission to have access to all accounts which it does keep."

No case has been cited, nor have I been able to find one, which has held contrary to those supporting the authority and jurisdiction of the Power Commission to require and control accounts of the character here involved. The Power Company leans most heavily on the decision of the Supreme Court in Connecticut Light & Power Co. v. Federal Power Commission, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150, but in that case the question was whether or not the Connecticut Light and Power Company

---

9 Northern States Power Co. v. Federal Power Commission, 7 Cir., 118 F.2d 141; Niagara Falls Power Co. v. Federal Power Commission, 2 Cir., 137 F.2d 787; Pennsylvania Power & Light Co. v. Federal Power Commission, 3 Cir., 139 F.2d 445; California Oregon Power Co. v. Federal Power Commission, 9 Cir., 150 F.2d 25.

838

was a public utility within the meaning of the Federal Power Act, and, therefore, whether or not the Federal Power Commission had any authority or jurisdiction respecting any accounts of the Connecticut Company. It was there decided that this Court proceeded upon an erroneous interpretation of Section 201 [10] in affirming an order of the Power Commission which determined the Connecticut Company to be a public utility. It was, therefore, considered doubtful that the Power Commission had applied the correct law with the result that the judgment of this Court was reversed, and it was directed that the cause be remanded to the Federal Power Commission for determination of the jurisdictional facts in accordance with the law as stated in the Court's opinion. Certainly there is no support for the Power Company's position here to be found in the Connecticut Company case. The significant thing about the action in that case, in so far as it is relevant here, is that the Supreme Court considered it necessary and proper for the jurisdictional facts to be determined by the Federal Power Commission.

I do not share the view expressed by the Court that facts are alleged in the complaint which show that the Power Commission has done, or threatens to do, anything which interferes with the clear right of the Department of Public Utilities of the State of Arkansas to require the Power Company to establish and maintain accounts such as that Department requires, and to control such accounts so established. The conclusion that the Power Commission does so threaten is based upon certain language in the Power Commission's motion to dismiss the complaint:

"No claim is stated upon which relief can be granted, since the Commission's accounting authority with respect to 'public. utilities,' including plaintiff, is not affected by any accounting requirements prescribed under state laws."

The construction I put upon this language is that the Power Commission is asserting what the numerous authorities have said it had the right to do, namely, to require the Power Company to keep such accounts en-

tirely independent of and unaffected by any state requirements. I do not construe such language to be an assertion that the Power Company shall not keep accounts required of it by the state authority and in strict compliance with such state regulation and control. Such assertion would be in clear violation of the plain language of the Act. Should the Power Commission take any action which would interfere with the authority of the State, or any of its agencies, respecting accounts or any proper regulation of the Power Company, I am confident that upon review in this Court the Power Commission would be stopped in such unlawful action before it became effective.

For the reasons I have stated, I am convinced that there is a full and adequate remedy, with statutory judicial review, which must be followed, and that recourse to the District Court cannot be had in lieu thereof. I can, therefore, see no reason why this case should not be disposed of upon the principle decided in the case of Myers, et al. v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. It has been urged that the Myers case could be distinguished from the instant case because of the explicit language in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., not found in the Federal Power Act. What lingering doubt that the Myers case had application to administrative agencies other than the National Labor Relations Board has certainly been dispelled by the recent case of Macauley, et al. v. Waterman Steamship Corporation, 327 U.S. ——, 66 S.Ct. 712. In that case there was much stronger basis than here for the contention that the District Court could take jurisdiction, because the contracts which were sought to be renegotiated by the Maritime Commission were between the steamship corporation and the British Ministry of War Transport, and not in terms between the steamship corporation and the Maritime Commission. The state of the law is even clearer now than it was when this Court, in Miles Laboratories v. Federal Trade Commission, 78 U.S.App. D.C. 326, 328; 140 F.2d 683, 685, speaking through Chief Justice Groner, said:

[10] 16 U.S.C.A. § 824.

"On no subject is the opinion of that Court [Supreme Court], as I view it, more definitely fixed than it is on the lack of power of the courts to inject themselves or be injected into proceedings which Congress has committed to the primary jurisdiction of administrative agencies."

In the view here expressed, I do not consider that the District Court had jurisdiction to oust or interfere with the jurisdiction of the Federal Power Commission, and, therefore, I am of the opinion that its action in dismissing the complaint should be affirmed.